Railway Passenger and Freight Conductors' Mutual Aid and Benefit Association

*v.*

Edward T. Robinson, Exr.

*Filed at Springfield October 27, 1893.*

1. Benefit societies—*jurisdiction—bill against mutual benefit society—sufficiency of plea.* To a bill in chancery filed in the circuit court of Sangamon county, in which county the complainant resided, against a mutual benefit society, the defendant pleaded to the jurisdiction of the court, that it was a corporation duly organized under the laws of this State, and had its principal and only office in Chicago, Cook county; that the defendant does not reside in Sangamon county, and that the pretended service of summons upon it was made in the county of Cook, and not in the county of Sangamon, and that defendant was not found or served with summons in the latter county: *Held*, that the plea was not sufficient to show want of jurisdiction, and was properly overruled.

2. If a mutual benefit society pleads its exemption from the character and *status* of an insurance company under section 31 of the act concerning corporations, approved April 18, 1872, as amended May 22, 1883, the plea will be bad, unless it avers that no annual dues or premiums are required of its members, or that its members receive no money, as profit or otherwise, except for permanent disability.

3. Same—*statute governing such societies.* A mutual benefit society, whether organized under the act of April 18, 1872, entitled "An act concerning corporations," or under the act of 1883, relating to mutual benefit societies, is, by section 9 of the latter act, brought under the provisions of that act, and also by the corresponding section of the act of 1887, revising the act of 1883, and it is subject to the provisions of that act.

4. Same—*jurisdiction and service of process.* The act concerning the jurisdiction of circuit courts in cases instituted against life and fire insurance companies, usually published as section 3, chapter 110, of the Revised Statutes, confers jurisdiction of all actions against insurance companies upon the circuit court in the county in which the plaintiff resides, and authorizes the issue of process to other counties for service. This act applies to suits in chancery as well as to actions at law. It is no part of the Practice act, though usually published as a section thereof, but is an independent statute.

5. A mutual benefit society is a life insurance company for all purposes, except that it is relieved from the onerous conditions and rules

applicable to life insurance companies. For the purpose of suits against them, and the service of process, they stand upon the same footing as other insurance companies.

6. SAME—*when they are life insurance companies.* Where a mutual benefit society is incorporated for the object and purpose of furnishing pecuniary aid to the widows, heirs, devisees and representatives of deceased members, by the assessments upon the proof of the death of a member, the benefits thus provided for are in the nature of life insurance, and the contract between the society and the member, evidenced by his certificate of membership and the constitution and by-laws of the society, is in effect a policy of insurance upon the life of the member.

7. SAME—*certificate of membership construed with constitution and by-laws.* A certificate of membership in a benefit society, though it contains on its face no contract of indemnity which entitles the holder to all the rights that appertain thereto, is to be construed in connection with the constitution and by-laws, the same as though all those documents were combined in one.

8. SAME—*contract that member's rights may be decided by a board of directors.* It is competent for members of benefit societies to so contract that their rights as members shall depend upon the determination of a tribunal of their own choice, which shall be conclusive. But when one of the parties, or his representatives, is sought to be made the final judge, the courts will not give such a construction to the contract as to have that effect, if it is possible to give any other.

9. The first paragraph of an article in the constitution of a mutual benefit society provided that all claims against the association should be referred to the board of directors, and that upon the approval of such claims by a majority of the board and by the president they should be paid by the secretary. The second paragraph provided that it should be the duty of the board to examine all books, papers and accounts, and know that the business was honestly and properly conducted, and that their decision should be final: *Held,* that the power of the board to make final decision was limited to the matters referred to in the second paragraph, and that no power was given to determine conclusively the rights of a beneficiary to the indemnity promised.

10. EVIDENCE—*hearsay.* The certificate and letters of a physician, sent to a mutual benefit society, tending to show that a deceased member had the consumption at the time of his application for membership, from which he died, being the unsworn declaration of a third person, are not admissible in evidence in a suit against the society. If the physician's certificate was a part of the proof of death of the assured, it is competent to show that fact, only.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

This was a bill in chancery, brought in the Circuit Court of Sangamon county, by Edward T. Robinson, executor of the last will and testament of James R. Robinson, deceased, against the Railway Passenger and Freight Conductors' Mutual Aid and Benefit Association, to enforce the payment by the association of the money claimed to have become payable upon the death of the complainant's testator. The bill alleges, in substance, that James R. Robinson, at the date of his will and at the time of his death, was a member of the defendant association, a corporation organized under the general incorporation laws of the State of Illinois; that the object and purpose of the association were, to furnish pecuniary aid to the widows, heirs, devisees and representatives of such members of the association as should die or become permanently disabled, and that, in furtherance of this object, it was provided by its constitution and by-laws, that, in case of the death of a member, on proof of such death being furnished, it should assess and collect from each surviving member, the sum of $2.50 for the benefit of the heirs or devisees of such deceased member, to be paid to him or them within thirty days from the collection of the assessment, provided, that, in no case should a greater sum than $2500 be paid on account of such death.

That James R. Robinson, on the 27th day of April, 1888, made and published his last will and testament, whereby, among other things, he bequeathed to the complainant his interest in his certificate of membership in the association, and directed that all moneys and benefits due thereunder should be paid to the complainant, and also appointed the complainant sole executor of his will; that after making such will, James R. Robinson, on or about August 3, 1888, de-

parted this life; that on August 13, 1888, the will was duly admitted to probate by the County Court of Sangamon county, and that letters testamentary were duly issued thereon to the complainant; that proofs of death were duly furnished to the association, and that a demand was made upon it for an assessment and payment to the complainant of the amount due him on the certificate of membership, but that the association, acting through its board of directors, wrongfully and without any just cause, refused to make the assessment, or to pay the complainant the amount due on the certificate of membership, and still refuses so to do; that at the time of the death of James R. Robinson, there were at least 1350 members of the association, and that its membership has since been steadily increasing, so that an assessment made under its by-law would amount to much more than the sum of $2500.

That James R. Robinson, in his lifetime, complied fully with all the requirements and obligations resting upon him as a member of the association, and that it was the duty of the association to levy an assessment of $2.50 on each of its surviving members, and from the moneys thus realized, to pay the complainant $2500, with interest thereon from the time the assessment should have been made. The bill prays that the amount due on the certificate of membership in question be ascertained and determined by the court; that the defendant be required forthwith to levy and collect an assessment of $2.50 from each of its members, and pay the same, to the amount found due to him, to the complainant, and also a general prayer for relief.

Attached to the bill as exhibits was a copy of the will of James R. Robinson, deceased, and also of the certificate of membership in question, the latter being as follows:

"Charter granted Dec. 1874.                              No. 3850.

"RAILWAY PASSENGER AND FREIGHT CONDUCTORS' MUTUAL AID AND BENEFIT ASS. FOR THE UNITED STATES AND CANADA.

"*Organized under the laws of the State of Illinois.*

CHICAGO, *May 9, 1887.*

"This is to certify that James R. Robinson, residence Springfield, Ill., is a member of the Railway Passenger and Freight Conductors' Mutual Aid Association.

"Given under our hands, and the seal of the association affixed. JOHN R. SANDY, *President.*

C. HUNTINGTON, *Secretary.*"

Upon this bill, a summons was issued directed to the sheriff of Cook county, and that summons was afterwards returned served by delivering a copy thereof to the defendant's secretary, its president not being found by the sheriff in his county. The defendant thereupon appeared and filed a plea to the jurisdiction of the court, alleging, in substance, that the defendant was a corporation duly organized under the laws of the State of Illinois, and had its principal and only office in the city of Chicago, in the county of Cook; that the defendant does not reside in the county of Sangamon, and that the pretended service of summons upon it was made in the county of Cook and not in the county of Sangamon, and that the defendant was not found or served with summons in the county of Sangamon.

This plea, on argument, was disallowed and overruled, and the defendant was ruled to answer. In compliance with that rule, the defendant answered, admitting the issuing by the association to James R. Robinson of the certificate of membership in question, and also admitting that one of the objects and purposes of the association was to provide for the widows, children, heirs or representatives of its members who might die or become permanently disabled, in such cases and events and under such terms, conditions and restrictions, and in such manner, as was provided by its constitution and by-laws, but

alleging that the defendant was an association of railroad conductors, its membership being limited to persons of that vocation, and that the benefits extended to its members, or to their widows, children, heirs or representatives, were only provided for by the constitution and by-laws of the association, and that no claim therefor can exist, except in case or when it arises under and in accordance with the constitution and by-laws, and on the terms, conditions and restrictions therein provided; that by the constitution of the association it is, and while James R. Robinson was a member, it was, prescribed as follows:

"Art. 5. The board of directors shall consist of seven members, all of whom shall reside or make their headquarters in the city of Chicago. To them shall claims against the association be referred, and upon the approval of a majority of said board, with that of the president, the same shall be paid by the secretary and treasurer. They shall fix the amount of salary to be paid the secretary and treasurer. It shall also be the duty of the board to examine all books, papers and accounts of the association, and know that the business is honestly and properly conducted. They shall decide all points of dispute and questions of doubt that may arise, and their decision shall be final. They shall, by appointment, fill all vacancies that may occur between the annual meetings, until the next regular meeting. Assessments shall be only made by the authority of the board of directors. They shall make a careful examination of the books of the secretary and treasurer in the month of October in each year, and submit their report to the next annual meeting. They shall order an assessment sufficient to meet any deficiency, when there are not sufficient funds to defray expenses for the ensuing year. They shall, at the expiration of each fiscal year, which shall end on the 30th day of September in each year, ascertain the amount of surplus funds in the hands of the treasurer, and after deducting a sufficient amount for current expenses for the ensuing

year, shall order the balance to be held as a reserve fund, to be applied on the next assessment or assessments, as the case may be.

"Art. 6.    No person shall be eligible to membership in this association who is not a person of good moral character, and free from pulmonary or constitutional disease, or laboring under any mental or physical disability.    Any person who, at the time of his application for membership, is a conductor on some railroad of the United States or Canada, and has been so employed for a period of at least six months, and in active railway service at the time of making his application, shall be eligible to membership in this association.    A certificate showing these facts from at least two members in good standing in this association, and the local secretary of the railroad or division from which the application is made, shall accompany such application.

"Art. 7.    In no case shall a greater sum than $2500 be paid to a member, or his heirs entitled to receive the same, on account of death or disability, and all moneys realized from said assessment over and above that sum shall be paid into the treasury of the association for the general purposes of its business.    And should the money in the treasury of the association at any time reach the sum of $2500 in excess of the amounts required, from time to time, for general purposes, the same shall be appropriated to the payment of the assessments then next due, and the members shall be exempt from the payment of said assessment.

"Art. 8.    The membership of this association shall be limited to fifteen hundred.    The amount of benefit money not to exceed $2500.    The assessment at all times to be $2.50 per member."

The answer further alleges that, during the time James R. Robinson was a member of the association, its by-laws provided as follows:

"Art. 4. The local secretary of each road or division shall, in case of the death of any member, after having received a certificate of the death of said member, signed by the attending physician, and with the certificate signed by the undertaker who prepared the body for burial, both having been duly sworn to before the justice of the peace or notary public, forward the same to the secretary, whose duty it shall be to present the same to the board of directors, and, with their endorsement and the approval of the president, shall notify the local secretary of each road or division of a road, who shall assess each member of said road or division of a road the sum of $2.50 each, and send such sums of money so collected to the secretary and treasurer.

"Art. 5. The secretary shall, within thirty days after such collections have been made, forward the amount to the legal heirs or representatives of the deceased members, and through the local secretary of said road or division they shall acknowledge or give lawful receipt for the amount of money thus paid and received.

"Art. 10. The benefit money to be paid in case of the death of any member of this association may be disposed of by his last will and testament, otherwise it shall belong to and be paid to his widow, or, in case he shall leave no widow, then to his legal heirs and representatives, and in the absence of said will, and in case such member leaves no widow, heirs or legal representatives, such benefit money shall revert to the association.

"Art 11.—Sec. 2. In the event of a certificate being issued (through mistake or otherwise) to any person not eligible to membership, or in the event of any member so transgressing the constitution and by-laws of the association as to render himself liable to expulsion therefrom, it shall be the duty of the board of directors, after thoroughly investigating the various matters relating to the ineligibility of any person to whom such certificate may be issued, or in event of the charges

aforesaid being clearly proven, to immediately cancel such certificate of membership, and to render the same entirely void and of no effect in the first mentioned instance, and to expel from the said association the member against whom such charges shall have been clearly proven; and upon the expulsion of any person in the above manner, the money paid the association by such person shall be retained by the association as payment for the insurance furnished while such person was a member thereof, and the decision of the board of directors in the matter of such expulsion shall be final."

The answer further alleges that, prior to the issuing of the certificate of membership to James R. Robinson, he submitted to the association his application therefor, therein stating that, to the best of his knowledge and belief, he was eligible to membership under the constitution and by-laws of the association, and that his certificate of membership was issued in reliance upon the truth of the statements in his application and on faith that the applicant was free from pulmonary or constitutional disease, and not laboring under any mental or physical disability; that before and at the time the certificate of membership was issued, he was not eligible to membership in the association, and was not free from pulmonary or constitutional disease, but was afflicted with and suffering from pulmonary tuberculosis, and was so afflicted during the residue of his life, that disease being the cause of his death; that he concealed and withheld the knowledge of such disease from the association, and obtained his admission as a member thereof by means of such concealment; that since the discovery of these facts, the association is ready and willing and offers to pay and return to the complainant all the money paid to it by Robinson.

The answer further alleges that the defendant has no knowledge or information, save from the bill, as to whether James R. Robinson made or published his last will and testament, or as to the contents or terms thereof, or as to the alleged

appointment of the complainant as executor, and leaves the complainant to make proof thereof as he may be advised. The answer admits service on the association of proofs of death, and a demand upon it for an assessment and payment to the complainant of the amount claimed to be due him on the certificate, but denies that the association, acting through its board of directors, wrongfully or without any justifiable cause, refused to order or make the assessment, but alleges that there is and has been nothing due on the certificate of membership.    It admits that at the time of the death of Robinson there were and still are about 1300 members of the association, but is unable to state whether an assessment under its by-laws would amount to $2500, but it denies that it is or was the duty of the association to make an assessment upon its members for the benefit of the complainant.

The answer further alleges that, after the death of Robinson, and on or about September 23, 1888, the complainant's claim against the association set forth in the bill, was submitted and was duly referred to the board of directors of the association, pursuant to the constitution and by-laws, and that the board of directors did, in pursuance of the constitution and by-laws, well and truly investigate the claim and the grounds thereof, and upon such investigation, did fairly and honestly conclude, determine and decide, that the claim was not valid and should not be allowed, and did by their decision disallow the claim; that such decision was and is final and conclusive of the rights of the complainant in that behalf, and is a bar to this suit; that by the constitution and by-laws, the members of the association have constituted the board of directors the tribunal to determine whether and when an assessment should be made, and that the members are subject only to such assessments as the board of directors authorize.

To this answer a replication was filed, and the cause coming on to be heard on pleadings and proofs, a decree was entered in accordance with the prayer of the bill.    On appeal to the

Appellate Court that decree was affirmed, and the present appeal is from the judgment of affirmance. All further facts necessary to a proper understanding of the case are sufficiently stated in the opinion of the court.

Messrs. MILLER, STARR & LEMAN, for the appellant.

Messrs. SCHOLES & GRAHAM, and Mr. JOHN M. PALMER, for the appellee.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

The decision of the Circuit Court disallowing and overruling the defendant's plea to the jurisdiction is assigned for error, and the first question for us to consider is thus presented. Two answers are made to the defendant's contention, (1) that the plea was insufficient to show want of jurisdiction, and (2) that the defendant, by appearing generally and answering the bill voluntarily submitted itself to the jurisdiction of the court, and thereby waived any error that may have been committed by the court in overruling the plea. The Appellate Court seems to have adopted the view that by answering, the defendant waived its plea, and to have decided the case, so far as this point is concerned, upon that theory. We are disposed, however, to adopt the other theory, and to hold that the plea was insufficient to show want of jurisdiction, and that it was properly overruled on that ground.

It is perhaps worthy of remark in passing, that there is nothing in the bill or plea, or in any other part of the record for that matter, showing, except by inference, when or under what statute the defendant association was incorporated. Its articles of incorporation are not before us, and while the bill alleges and the plea admits that the association was incorporated under the laws of this State, it is not alleged whether the organization took place under those provisions of the "Act concerning corporations," approved April 18, 1872, which relate to the formation of corporations not for pecuniary profit,

or under the act of June 18, 1883, providing for the incorporation of mutual benefit societies. The objects and purposes for which it was incorporated, as they are alleged in the bill and admitted by the defendant's pleadings, would seem to indicate that it is a corporation which may have been organized under either of those acts. The only intimation in the entire record as to the date of incorporation is found in the following words: "Charter granted Dec. 1874," printed at the top of the membership certificate which the bill seeks to enforce. This can scarcely he regarded as competent proof of the date, but of course, if the organization took place in December, 1874, it could not have been under the act of 1883. However the fact may be, the association, if it was incorporated for the purposes alleged and admitted, it is, by the ninth section of the act of 1883, brought under the provisions of that act, and also by the corresponding section of the act of 1887, revising the act of 1883, it is subjected to the provisions of that act.

The summons in the present case was issued by the Circuit Court of Sangamon county to the sheriff of Cook county and served in the last named county, as is claimed, in pursuance of the provisions of the "Act concerning the jurisdiction of Circuit Courts in cases instituted against life and fire insurance companies," approved April 3, 1873. That act provides as follows: "The Circuit Court of the county wherein the plaintiff or complainant may reside, shall have jurisdiction of all actions hereafter to be commenced by any individual against any fire or life insurance company, either incorporated by any law of this State or doing business in this State. And all process issued in any cause commenced in the county wherein the plaintiff may reside, wherein an individual may be plaintiff and any such company defendant, may be directed to any county of this State for service and return."

It is urged that this statute, which is usually published as section 3, chapter 110, of the Revised Statutes, was intended

to apply only to suits at law, and can have no application to suits in chancery. It may be admitted that what is usually known as the Practice Act has no reference to modes of proceeding in chancery cases, except as the language either expressly or by clear implication refers to such procedure. See *Moore* v. *Tierney,* 100 Ill. 207. But what is published as section 3 of chapter 110 is not and never was a part of the Practice Act, but is an independent statute, passed at a different time, and by its terms applicable as well to cases in chancery as to cases at law.

Prior to the passage of that statute, the mode of commencing suits against and obtaining service upon corporations, was prescribed by an act entitled, "An Act to amend chapter eighty-three, Revised Statutes, entitled Practice," approved February 3, 1853. That act was afterwards compiled and published as section 6, of the chapter of the Revised Statutes then in force entitled "Practice," and it provided: "That in all cases where any suit has been or may hereafter be brought against any incorporated company, process shall be served upon the president of such company, if he reside in the county in which the suit is brought, and if such president be absent from the county, or does not reside in the county, then the summons shall be served by the proper officer by leaving a copy thereof with any clerk, etc., of such company, found in the county." Two cases involving the construction of this statute arose and were decided at about the same time, viz, *Stephenson Ins. Co.* v. *Dunn,* 45 Ill. 211, and *Winnesheik Ins. Co.* v. *Holzgrafe,* 46 id. 422, the former being a suit at law and the latter a suit in chancery, and in both of which suit was brought in one county against an insurance company and process therein issued to and served in another county. In both it was held that, under the statute above mentioned, the summons could not be sent from one county to another for service, and that the service had in those cases gave the court no jurisdiction. In the Holzgrafe case, which was in chan-

cery, it was expressly held that the statute of 1853 applied to chancery cases as well as cases at law. It is a matter of history that the statute in relation to suits against insurance companies now in force, was passed shortly after these two decisions were made, and it is highly probable that it was passed in view of those decisions, and for the purpose of remedying the serious inconvenience to parties desiring to bring suits against insurance companies arising from the provisions of the statute as thus construed.

It seems plain that, if the act of 1853 applied to proceedings in chancery, for the same and stronger reasons the present statute should be given the same application. The act of 1853 was passed expressly as an amendment to the Practice Act, while the present act is not thus limited, but was passed as an independent act, concerning the jurisdiction of Circuit Courts in cases, that is, cases in chancery as well as at law, against insurance companies. And to guard against misapprehension, the terms "plaintiff" and "complainant" are used, the former term being applicable to the actor in suits at law, and the latter to the actor in suits in chancery.

But it is urged that the defendant in the present case is not an insurance company, within the meaning of the statute above mentioned, and can not therefore be affected by its provisions. The object and purpose for which the defendant was incorporated, as the bill alleges and as the plea must be deemed to admit, was, to furnish pecuniary aid to the widows, heirs, devisees and representatives of deceased members of the association, and it is further alleged, by way of showing the mode in which the proposed aid was to be furnished, that it was provided by the constitution and by-laws of the association, that in case of the death of a member, on proof of such death, the association should assess and collect from each surviving member, the sum of $2.50, for the benefit of the heirs or devisees of the deceased member, the same to be

paid to him or them, to the amount of not exceeding $2500, within thirty days after the collection of the assessment.

There can be no doubt, we think, that the benefits provided for by the constitution and by-laws of the association are in the nature of life insurance, and that the contract between the association and the member, evidenced by the constitution, by-laws and membership certificate, is, in substance, a policy of insurance upon the life of the member. See *Rockhold* v. *Canton Masonic Benevolent Society*, 129 Ill. 440, and cases cited. It is true the membership certificate bears upon its face no promise of indemnity, but it entitles the holder to membership in the association and to all rights that appertain thereto, and it is to be construed in connection with the constitution and by-laws, the same as though all of those documents were combined in one. Taken together, they constitute an undertaking on the part of the association, subject it is true to certain conditions which will be hereafter noticed, in case of the death of a member, on proper proof of his death, to levy and collect an assessment of $2.50 on each surviving member, and to pay the same over, to an amount not exceeding $2500, to a certain designated beneficiary or beneficiaries. This is clearly, in substance and effect, a contract of insurance, and an association organized for the purpose of entering into and performing contracts of that character, is in reality an insurance company.

But it is said that the defendant is not an insurance company within the meaning of the act in relation to suits against such corporations, because the statute under which the defendant was organized declares that such associations and societies shall not be deemed insurance companies.

Section 31 of the "Act concerning corporations," approved April 18, 1872, that section being a part of the subdivision of the act relating to corporations not for pecuniary profit, as amended May 22, 1883, provides that: "Associations and societies which are intended to benefit the widows, orphans,

heirs and devisees of deceased members thereof, and members who have received a permanent disability, and where no annual dues or premiums are required, and where the members shall receive no money as profit or otherwise, except for permanent disability, shall not be deemed insurance companies."

It may be noticed that the plea in this case fails, by proper averments, to bring the defendant within the provisions of this statute. There is no averment that no annual dues or premiums were required of its members, or that its members received no money as profit or otherwise, except for permanent disability. It is difficult to see how, without such averments, the defendant can be held to be exempted by this statute from the character and status of an insurance company.

Turning now to the act in relation to Mutual Benefit societies, approved June 18, 1883, we find that the first section of the act provides for the organization of corporations, associations or societies for the purpose of furnishing life indemnity or pecuniary benefits to the widows, heirs, orphans or relatives by consanguinity or affinity, devisees or legatees of deceased members, or accident or permanent disability indemnity to members thereof, and where members shall receive no money as profit, and where the funds for the payment of such benefits shall be secured, in whole or in part, by assessment upon surviving members. Subsequent sections prescribe the mode in which associations of that character may be organized, and their affairs conducted and administered, and section 9 provides as follows:

"All corporations, associations or societies organized under the provisions of this act, or that have heretofore been organized within this State, under any charter, compact or agreement or statute of this State, for the purpose of furnishing life, accident or permanent disability indemnity or mortuary benefit on the assessment plan, in accordance with the provisions of the first section of this act, shall not be deemed insurance companies, nor subject to the laws of this State

relating thereto, but shall comply with and comform to all the requirements and provisions of this act."

And in the same section, such associations are required to make to the Auditor of Public Accounts, annually, under oath, reports showing their financial condition, assets, liabilities, total amount of indemnity in force, number of members, number whose membership has terminated during the year and the cause thereof, total receipts and sources thereof, total expenditures and objects thereof, and the average amount paid on each certificate, and subsequent sections place such associations under the control and supervision of the Auditor. 1 Starr & Cur. Stat. 1350.

By an act approved June 16, 1887, the act last mentioned was revised and its provisions extended and enlarged, especially those conferring supervisory and visitorial powers over such associations upon the Auditor of Public Accounts; and section 9 of that act contains precisely the same provision as did the original act in relation to such associations being deemed insurance companies.    3 Starr & Cur. Stat. 729.

The object and purpose of these provisions exempting Mutual Benefit Associations from the character and status of insurance companies becomes apparent, when we examine the general insurance laws of the State, and especially the "Act to organize and regulate the business of life insurance," approved March 26, 1869.    That act subjects every life insurance company incorporated or doing business in this State to a variety of rules, and requires of them the performance of various duties which would be both oppressive and inappropriate as applied to Mutual Benefit Societies.    Before any of these societies had been organized, or any law enacted providing for their organization, the Legislature had passed general statutes providing for the organization and government of both fire and life insurance companies, and for the regulation of the entire business of fire and life insurance, and requiring all companies engaged in that business to comply

with the rules prescribed by those statutes. Subsequently, when Mutual Benefit Societies began to be organized, and that form of life insurance came into use, it became apparent that it would be impracticable to subject those societies to the same code of rules and regulations already in force for the government of the business of life insurance, and that an essentially new system of rules was required.

The first expedient adopted for relieving them from the necessity of complying with the provisions of the General Insurance Law was by simply declaring that they should not be deemed insurance companies. In the further progress of legislation, the precise reason for this declaration was more distinctly indicated. It was declared that they should not be deemed insurance companies, "nor subject to the laws of this State relating thereto, *but shall comply with and conform to all the requirements and provisions of this act.*" They were thereby, in express terms, relieved from the duty of compliance with the General Insurance Law, and instead of it, they were required to comply with the provisions of the act relating specifically to that class of societies.

We therefore think it clear that, when these provisions are considered and construed in the light of the history of our legislation on the subject of insurance and insurance companies, that the legislative intention was merely to exempt Mutual Benefit Societies from the duty of complying with the General Insurance Law, and to substitute therefor a code of rules specifically applicable to that class of associations. This construction in our opinion does no violence to the language of these statutes, but merely limits it to the subject matter which was manifestly in the legislative mind when the statutes were passed. There is nothing in the statutes themselves, nor in the circumstances attending their enactment, furnishing ground for the supposition that the Legislature had in mind the statutes regulating the jurisdiction of the courts, or the course of judicial procedure in suits brought

against these societies. These are matters with which the Legislature was not then attempting to deal, and the language used, by fair construction, should be so limited as to have no application to those subjects.

It may also be noticed that the same considerations of public policy which induced the Legislature to authorize suits against insurance companies to be brought in the county where the plaintiff resides, exist with equal or even greater force in case of suits against Mutual Benefit Societies. These societies, in these late years, have become very numerous, and the amount of insurance effected through their instrumentality has become very large, and the beneficiaries are usually persons of small means, and who can ill afford to go to a distant county for the purpose of enforcing their rights by suit. To give a construction to the statute which would compel them so to do, would not only impose upon them an intolerable burden, but would go far towards impairing the practical value of the insurance obtained from these societies. In view of these considerations, we are not disposed to give the statutes a construction which will produce these results, unless the language employed is such as to preclude any other. This, as we think we have shown, is not the case, and we are therefore disposed to hold that the "Act concerning the jurisdiction of Circuit Courts in cases against life and fire insurance companies," approved April 3, 1873, applies to Mutual Benefit Societies, as one of the classes of life insurance companies, and that the summons in this case was properly issued from Sangamon county to Cook county, and that its service by the sheriff of the latter county gave the Circuit Court of Sangamon county jurisdiction of the defendant. It follows that the plea to the jurisdiction was properly overruled.

It is next insisted that, upon the merits of the case, the decree is not supported by the evidence. This contention involves two propositions, (1) that James R. Robinson, at the time he applied for membership in the association and was

admitted, was not eligible to membership; that he was then afflicted with pulmonary tuberculosis, the disease of which he afterwards died, and that he fraudulently concealed from the association that he had that disease, and obtained his admission as a member by means of such concealment. (2) That the directors of the association, in pursuance of the constitution and by-laws, investigated the complainant's claim under the certificate of membership, and concluded, determined and decided that his claim was not valid and disallowed it, and that their decision in respect thereto was final and conclusive upon the complainant.

Considering the first of these propositions, we are of the opinion that the evidence fails to show that, at the date of his admission to membership, James R. Robinson was afflicted with the disease alleged. He was admitted to membership May 9, 1887, and died August 3, 1888, and it is not disputed that he died of tubercular consumption. The competent evidence in the record seems to show that at the date of his admission to membership, he was in good health, and that the disease of which he died was subsequently contracted. The only evidence tending to show the contrary is to be found in an unsworn certificate of Dr. Whitley, a physician who claims to have attended and treated the deceased for consumption, and a letter subsequently written by him to the secretary of the association. The certificate was dated August 4, 1888, the day after Robinson's death, and the evidence tends to show that it was enclosed with or attached to the proofs of death subsequently served on the defendant. In it Dr. Whitley certifies that he had attended Robinson for a year and a half for consumption, and that he died of that disease. It appears that the secretary of the association subsequently wrote to Dr. Whitley for further information on the subject, and received from him in reply a letter in which he wrote that he had treated Robinson for the last three years of his life for pulmonary tuberculosis, and that that disease was the cause

of his death.    This certificate and letter seem to have consti-
tuted the evidence upon which the directors of the association
acted in rejecting the complainant's claim.

There is certainly no principle of law which justifies the
consideration of Dr. Whitley's letter as evidence having any
tendency to prove the facts therein stated.    It is a mere un-
sworn declaration by a third party and is clearly inadmissible.
If the Doctor's certificate was a part of the proofs of death, it
was admissible for the purpose of showing compliance with
the conditions of the contract requiring such proofs.    But the
complainant was not bound by it, and even if it can be con-
sidered at all as proof of the facts certified to, its force is over-
come by the evidence of the witnesses, both professional and
non-professional, that Robinson, at the date of his member-
ship certificate, was in good health, and was not afflicted with
consumption.    Upon this issue of fact, the decree, in our
opinion, is abundantly sustained.

Upon the other proposition, viz., that the decision of the
board of directors of the association rejecting the complain-
ant's claim is conclusive, so as to leave nothing for the courts
to adjudicate, we are unable to concur in either the reason-
ing or conclusions of the learned counsel for the defendant.
The position taken by them seems to be, in the first place, that
the membership certificate, constitution and by-laws, when
construed together, constitute no absolute contract for the
payment of money to the proper beneficiary in case of the
death of a member, but merely a promise to pay in case the di-
rectors shall so decide, thus leaving the matter of payment,
and the ordering of an assessment, to the mere discretion of
the board of directors.    It is true article 5 of the constitution
provides that assessments shall be made only by authority of
the board of directors, and article 4 of the by-laws makes it
the duty of the secretary, in case of the death of a member, to
submit the proofs of death to the board, and provides that,
with their indorsement and the approval of the president, the

proper steps for making an assessment shall be taken. But it does not follow that these matters are left to the mere discretion of the board. As we construe the contract, when a member dies, and proper proofs of death are served, unless some defense exists which is good in law, the amount which an assessment of $2.50 on each surviving member will produce, up to $2500, becomes absolutely payable, and it becomes the duty of the directors—a duty which the courts will enforce—to make and collect the proper assessment, and pay the same over to the designated beneficiary. In these respects we are able to perceive no essential difference between the contract in this case and the ordinary indemnity contract existing between Mutual Benefit Societies and their members. The fact that the promise to pay is not embodied in the membership certificate is unimportant, so long as the contract is evidenced by other writings to which both the society and its members are parties.

But the most serious difficulty, as must be admitted grows out of those provisions of article 5 of the constitution relating to the power of the board of directors to decide upon claims against the association, and the conclusiveness of those decisions. That it is competent for members of societies of this character to so contract that their rights as members shall depend upon the determination of some tribunal of their own choice, and that such determination shall be conclusive, may be conceded. But where the designated tribunal is the society itself, one of the parties to the controversy, or what is substantially the same thing, the board of directors, which is its official and organic representative, the courts will hesitate and even refuse to treat its decisions as final and conclusive, unless the language of the contract is such as to preclude any other construction. The judicial mind is so strongly against the propriety of allowing one of the parties, or its especial representative, to be judge or arbitrator in its own case, that

even a strained interpretation will be resorted to if necessary to avoid that result.

On referring to article 5 of the constitution, it will be found that, as set out and alleged in the defendant's answer, the article is divided into three paragraphs, and its subject matter is such as to make that division natural and proper. The first paragraph merely provides that all claims against the association shall be referred to the board of directors, and that upon the approval of such claims by a majority of the board and by the president, they shall be paid by the secretary. It is perhaps doubtful whether the claims here referred to include the indemnity payable on the death of a member, as those are claims which the secretary can not ordinarily pay on their approval by the board, but only after the making and collection of an assessment. But however this may be, the provision certainly amounts to no delegation of power to determine conclusively the validity or invalidity of the claims presented. Its effect is to constitute the directors an auditing board to which claims are to be referred in the first instance before the secretary is authorized to pay them. In this it clearly has nothing to do with the final adjudication of contested claims. It makes no provision for a contest or hearing, and does not contemplate any of those proceedings which are dictated by the principles of natural justice, for the purpose of enabling a claimant to appear and present his proofs, and to be heard in relation to the validity of his claim.

In the second paragraph it is provided as follows: "It shall also be the duty of the board to examine all books, papers and accounts of the association, and know that the business is honestly and properly conducted. They shall decide all points of dispute and questions of doubt that may arise, and their decision shall be final." What are the points of dispute and questions of doubt which they were to conclusively decide? The most obvious and natural construction of the language used would limit this clause to the questions which might arise

in the examination of the books, papers and accounts of the association and in ascertaining and seeing to it that its business was honestly and properly conducted. This interpretation most nearly accords with the grammatical structure of the paragraph, and as a further reason for its adoption, it should be noticed that the first paragraph of the article is intended to regulate the conduct of the association in dealing with third parties and those having claims against it, while the second paragraph relates to the conduct of its internal affairs and the regulation of its own business. It was entirely proper that in the matters referred to in the second paragraph, the power of the board of directors should be plenary, and its decisions final and conclusive, while the exercise of such power in the dealings of the association with its creditors would be highly objectionable. In view of these considerations, we are inclined to hold, that the proper and reasonable interpretation of the entire article should limit the power of the board of directors to render final decisions to the matters referred to in the second paragraph, and that no power is given to determine conclusively the complainant's rights under the certificate of membership in question.

But even if this were the less natural and obvious construction, still, so long as it is in any event a construction which is fairly admissible, it should be adopted to avoid a construction which would vest the board of directors of the association with power to determine conclusively the liablility of the association upon a membership certificate.

We have examined the authorities cited by counsel in support of their contention, and find that most of them involve questions different from those presented here and are therefore inapplicable. The case of Rood against this same association, reported in 31 Federal Reporter, 62, is in point, and in that case a different result was reached. While we have the highest respect for the distinguished judge who rendered that decision, we are unable to yield our assent to its conclusions.

11—147 Ill.

After carefully considering the record, we are of the opinion that the decree of the Circuit Court was right, and the judgment of the Appellate Court affirming the decree will accordingly be affirmed.

*Judgment affirmed.*