## Mina Ankele, Defendant in Error, v. Workingmen's Relief Societies, A. U. V. O. of the State of Illinois, Plaintiff in Error.

### Gen. No. 17,778.

1. INSURANCE, § 747*—*when member of mutual benefit society bound by new by-laws.* A member in a mutual benefit society may be bound by new by-laws when he consents to be so bound for a sufficient consideration though such consent or agreement be not a part of his original contract.

2. INSURANCE, § 747*—*when member of mutual benefit society bound by new by-law by estoppel.* Where a member of a mutual benefit society acquiesces in a new by-law reducing the amount of death benefits and pays assessments in accordance therewith for more than two years, such member and his beneficiary are estopped to claim payment under the old by-law.

3. INSURANCE, § 747*—*consideration for consent to change in by-laws.* Reduction of society's liability and reduction of assessments constitute ample considerations for members consent to a new by-law.

Error to the Municipal Court of Chicago; the Hon. WILLIAM N. COTTRELL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Reversed with finding of facts. Opinion filed October 15, 1913.

HERMAN H. BREIDT an⌣ ⌣ ⌣ A. MEYER, for plaintiff in error.

CHARLES E. FRAZIER and ⌣ s ZIV, for defendant in error.

MR. JUSTICE DUNCAN de⌣ ⌣d the opinion of the court.

Mina Ankele, defendant i⌣ ror, recovered a judgment of $328 against the ⌣ kingmen's Relief Societies, A. U. V. O. of the ⌣ ⌣e of Illinois, plaintiff in error, on a membership c⌣ ⌣cate providing for the payment to her by said soc⌣ the sum of $500 upon the death of her husband, F⌣ Ankele, to whom said certificate was issued, Augus⌣ ⌣, 1902.

The evidence in this record discloses that said society was incorporated by special act of the legislature of this State, February 16, 1865, and that said act was amended by the legislature March 26, 1869, by an act declared to be a public act. The said charter, as amended, declared the object of said society and the subordinate lodges thereof to be: "To unite the members thereof in a bond of brotherhood and mutual friendship; to minister to their wants in sickness and in distress; to bury their dead brethren and to provide for their needy widows and orphans, and to raise funds to give to their widows, heirs, next of kin, etc., entitled thereto under the by-laws of said corporations." The charter also granted power to the Grand Council of said society to assess such initiation fee and other monthly or quarterly dues necessary to carry out the objects of said corporations, and to said corporations the power to make and from time to time to alter as they deem expedient and proper the by-laws of said corporations with reference to the times and manner of electing officers, and their number, names and duties, "and such other provisions for the good government, general welfare, improvements and existence of said respective corporations, as the majority of the members of each corporation may determine," not inconsistent with the laws of this State. The following by-laws of June 9, 1901, were in full force and effect when said membership certificate was issued to Emil Ankele:

"Upon the death of a member, the person or persons to whom the death fund certificate is made payable and whose name is conscientiously enrolled in the lodge death fund is entitled to the sum of $500, which sum is to be paid out of the order's death fund."

"This $500 death money shall be derived through a standing assessment of 75 cents per month. In the event that the treasury is too weak, the Grand Secretary shall call an extra assessment, which is to be paid with the monthly assessments.  *   *   *   All surplus

which shall be derived from the hall management shall go to the death fund, so that all members will have equal benefit of the order.''

Dues were collected also for sick benefits, etc., and for the burial of the deceased wives of members and all members at first paid equally for dues and assessments, but the assessments to the death fund were raised to $1.55 per month in January, 1907. A graduated rate was on July 24, 1907, recommended to all the members of the order by a committee duly appointed by the Grand Lodge, by which members would be required to pay monthly assessments as follows:

    Age 18 to 25.............$1.35
    Age 26 to 30............. 1.45
    Age 31 to 35............. 1.55
    Age 36 to 40............. 1.70
    Age 41 to 45............. 1.85
    Age 46 to 50............. 2.35
    Age 51 to 55............. 2.60

The committee further reported that said rates should be raised every five years, and that, ''should the members not be satisfied with the above proposition under the present insurance of $500 and $100 woman's insurance, it would be advisable that each member pay $1.00 for each death, and that upon the death of a member the society pay as many dollars as it has members on the day that the payment is due. Upon the death of a woman every member pays a pro rata assessment. The dues are 50 cents per month and $1.00 per year for the reserved fund.''

At an extra society meeting held August 25, 1907, composed of the members of the Grand Lodge and a large majority of the members of each section or subordinate lodge of the order, after having considered the report and recommendations of said committee, the following by-laws were unanimously adopted to take effect September 1, 1907, to-wit:

''First:—Done away with the death money of $500.

Second:—Done away with the age rate and all extra assessments.

Third:—The death money is $1.00 from every member who is in good standing at the day of the death of a member.

Fourth:—The assessment of $1.00 per member must be paid in advance.

Fifth:—The sum for the sick fund amounts to 60 cents per month.

Sixth:—Upon the death of the wife of a member $100 death money will be taken from the sick fund.''

The entire by-laws of the order were revised and approved at the session of the Grand Lodge, August 31, 1907, the concluding order of which reads thus: ''This constitution of the Grand Lodge, as well as the constitution of the subordinate lodges, shall be in force and effect from this 1st day of September, 1907, and all former laws and decrees are hereby repealed.''

The new by-laws so adopted for the regulation of the death benefit fund read as follows: ''In case of death of a brother every member must pay the sum of $1.00. At the death of a member the person (or persons) who is designated as the beneficiary in the certificate, shall receive as many dollars as there are members in good standing at the time of the death of the member.''

''After the death of a member, the Secretary of the society shall send to each section a written notice, giving the name of the deceased, his place of residence, and the number of his section.''

''After the decease of a member the designated heirs shall receive an amount of dollars equal to the number of members in good standing at the time of the death of the member, after the furnishing of all legal proofs of death. Such amount to be paid within 30 days after the death.''

The real question presented for the decision of this court is as to whether or not Emil Ankele and appellee, the beneficiary named in his certificate, were bound by the said by-laws of 1907. It is conceded by defendant in error that there were only one hundred and seventy-two members in the society in good standing at the date of Ankele's death, and that she has received from plaintiff in error $172.00. It is insisted for

her here that she is not bound by the new by-laws, because her certificate does not provide that it shall be subject to subsequent changes of the laws of the order. The certificate in question merely certified that Emil Ankele was a member of the society in good standing, and that as long as he "punctually followed" all the laws, rules and orders thereof, he had thereby part of the death fund of the order to the amount of $500, which sum, after his death, should be paid to his wife, Mina Ankele. A member in a mutual benefit society may consent by his contract that subsequently enacted by-laws or amendments shall enter into and form parts of his contract modifying or varying it. He may also be bound by such new by-laws if he consents to be so bound for a sufficient consideration, although such consent or agreement be not a part of his original contract. Where in such case he acts under the new laws and clearly recognizes them as modifying his contract, and accepts the benefits accruing to him therefrom, he will be estopped to deny that he has consented to the modification. It is also the rule that such by-laws though assented to by a member shall not be permitted to operate retrospectively against him, unless the intention to have them so operate is clear and undoubted. Niblack on Benefit Societies, secs. 26, 27; *Covenant Mut. Life Ass'n v. Kentner,* 188 Ill. 431.

The certificate of membership is not the entire contract, however, but is only a mere "fragment" thereof. The charter, constitution and by-laws of the society, if the member has assented thereto, are a part of his insurance contract whether they are referred to in the certificate or not. A beneficiary, not being a party to the contract, has no vested rights in such a certificate, and is bound by the consent of the contracting member to an abridgement or annulment of her prospective interest in the contract. Niblack on Benefit Societies, secs. 136, 137; *Railway Passenger, etc., Ass'n v. Robinson,* 147 Ill. 138; *Catholic Knights v. Franke,* 137 Ill. 118; *Peterson v. Gibson,* 191 Ill. 365.

The undisputed evidence in this record shows that in 1907 and prior thereto it had become necessary to gradually increase the assessments for deaths as aforesaid, in order to raise $500 after every death to pay the beneficiaries under the old by-laws, by reason of the constant decrease in the number of the members in good standing in the society; that there were only two hundred and forty such members in all the lodges when the said original by-laws were repealed and the new ones adopted; that every member of the order, including the deceased, Emil Ankele, were duly served with copies of the following instruments, on the following dates: on July 24, 1907, a copy of said report of the Grand Lodge Committee and its recommendations accompanied with a notice to attend the society meeting at the society's hall in Chicago, August 25, 1907, to vote on the proposed changes; on September 3, 1907, a copy of the new by-laws as adopted with a statement that they were unanimously adopted at said meeting, August 25, and would take effect September 1, 1907; and after August, 1907, a printed copy of the new revised by-laws of August 31, 1907.

It is also uncontroverted that Mr. Ankele was fifty-five years of age when he died, and that it would have required more than $2.00 for every member of his lodge on an equal assessment at the time the new by-laws were enacted to pay the beneficiary of any deceased member $500, and that all the members were paying for sick benefits and assessments for deceased members' wives, etc., and that there was no other fund to give relief therefrom, and that those burdens were constantly increasing as their numbers were constantly decreasing. Ankele understood the situation fully September 1, 1907. He asked Mr. Reinecker, secretary, the condition of the society, and how much he would have to pay under the new by-laws and how much he would get if he died, and was informed that he and all other members would have to pay $1.00 for

every death assessment, and that he and all other members would only receive at death for their beneficiaries the sum of $1.00 for every member in good standing after September 1, 1907. He also asked how many members there were, and after having the matters fully explained was satisfied, paid his $1.00 in advance for the advance assessment, and paid according to the new by-laws for the nineteen deaths that occurred in the twenty-nine months following September 1, 1907, without objection or protest, and then died with the full understanding that the society was only to pay his beneficiary $1.00 for every member in good standing. All the other members in his society did the same, that is, acquiesced in the new by-laws and paid the new assessments on the new plan without complaint or protest and with the understanding that their beneficiaries would be paid only $1.00 for each member in good standing instead of $500, according to the old by-laws then repealed. The reductions of the society's liability, and the reductions of his assessments, would have constituted ample considerations for a new agreement between him and the society that the new by-laws should bind him and his beneficiary. *Supreme Council, A. L. H. v. Garrett* (Tex.) 85 S. W. Rep. 27; *Breslow v. Southern T. M. Relief Ass'n,* 107 App. Div. (N. Y.) 123. Mr. Ankele was not bound by the new by-laws as to the amount his beneficiary would receive thereunder in the absence of an intent to be so bound. It is clear that he understood that he was bound thereby, and that he accepted the benefits of the new by-laws with intent to be so bound, and that all the other members of the order did so with the same understanding and intent, and with the further understanding that every other member was so bound. Having elected to accept the benefits conferred upon him by the new by-laws for almost two and one-half years after their enactment, it would be nothing short of a fraud for him and his beneficiary to claim payment under the old by-laws and they are estopped to do so. *Supreme*

*Council, A. L. H. v. Lippincott,* 67 C. C. A. 650, 134 Fed. 824; *Supreme Council, A. L. H. v. McAlarney,* 67 C. C. A. 546, 135 Fed. 72; *Clymer v. Supreme Council, A. L. H.,* 138 Fed. 470.

The court erred in rendering judgment in favor of defendant in error, and the judgment is reversed with a finding of facts.

*Reversed with finding of facts to be incorporated in the judgment.*

Finding of Facts: That by the acts and conduct of the said Emil Ankele he and defendant in error were and are estopped to claim any further or other sum from plaintiff in error on the certificate in suit than the sum of $172; that said sum of $172 was fully paid to defendant in error by plaintiff in error before the bringing of this suit, and that plaintiff in error was not indebted to defendant in error in any sum at the bringing of her suit.