## Hanley v. City of Bradford
## Local Union 655, International Association of Fire Fighters v. City of Bradford

*Murray R. Garber*, for plaintiffs.
*Richard E. Brandow*, for defendant.

THOMAS, P. J., (Thirtieth Judicial District, Specially presiding), July 1, 1970.—These two companion petitions raise the same novel issue and can be disposed of together. The petitions ask the court to appoint an arbitrator for the City of Bradford under an agreement with the unions.

On December 31, 1968, the policemen and firemen entered into an agreement with the City of Bradford under the provisions of the new collective bargaining act of June 24, 1968 (no. 111), 43 PS §217.1. The agreement established wages, working conditions, obligations and rights of the parties. Paragraph 10A defines a grievance as a claim that the city has not

complied with a provision of the agreement and the agreement then provides in paragraph 10D that if the parties cannot agree in regard to the grievance, the matter in dispute shall be arbitrated. A panel of three arbitrators would be selected with the unions and city each designating one arbitrator and these two selecting a third. The decision of the three arbitrators would be binding on the parties.

A grievance arose between the unions and the city in regard to paragraph 4A(2)(a) of the agreement. The dispute arises over the proper interpretation and application of this paragraph as it purports to apply the United States Department of Commerce cost of living index to the 1970 salaries of the police and firemen. The relative positions of the parties are immaterial to the issue we are here called upon to resolve.

The city and unions proceeded toward arbitration of this grievance and the unions appointed Attorney William F. Potter as their arbitrator. The city then appointed Robert W. Gehrig as its arbitrator. It is the city's appointment of Gehrig that brings the matter before the court. Robert W. Gehrig is the City manager of Bradford. The unions object to Gehrig's appointment as an arbitrator and allege:

(a) He is the city manager.

(b) He is the representative of the city with whom the unions had been negotiating the grievance.

(c) He is believed to be the city official who interpreted the disputed clause regarding cost of living salary adjustments adversely to the unions.

The unions ask the court to set aside the appointment of Gehrig as an arbitrator and cite as the court's authority to do so the Act of April 25, 1927, P. L. 381, 5 PS §164, which act's provisions may be summarized as follows:

"Appointment of arbitrators.

"If in the agreement provision be made for a method of naming . . . arbitrators . . . , such method shall be followed, but . . . if any such arbitrators be disqualified to sit, then, upon application of either party to the controversy, the court shall designate and appoint arbitrators, . . . , as the case may require."

The relative positions of the parties may be summarized as follows:

The unions take the position that it is inherently unfair and beyond the intent of the agreement that one of the parties act as an arbitrator, particularly when this arbitrator has participated in the negotiations and whose vote in the controversy is a foregone conclusion.

The city takes the position that the agreement provides for a free and uninhibited choice by each party of an arbitrator and that, since the agreement does not preclude the appointment of an employe of one of the parties, the union has no grounds for objection, since they could have availed themselves of the same opportunity.

There seems to be a scarcity of cases in this area in Pennsylvania, but we note an interesting opinion by President Judge Pinola in Munson v. Dury Clothing Company, Inc., 33 D. & C. 2d 450 (1964). In this case, Judge Pinola held that an officer and shareholder of a corporation who has also participated upon behalf of the corporation in discussions involving a controversy, is not qualified to act as an arbitrator in an arbitration proceeding to resolve the same controversy. Judge Pinola cites cases summarized in 5 Am. Jur. 2d, Arbitration and Award, §99, for the common-sense legal maxim that:

"If parties are to be encouraged to arbitrate, arbitration proceedings must be conducted with the same degree of impartiality as the courts afford. Pub-

lic policy requires, therefore, that arbitrators not only be completely impartial but also that they have no connection with the parties or the dispute involved which might give the appearance of their being otherwise. Obviously a person is disqualified to act as an arbitrator if he is himself a party to the dispute."

Judge Pinola's opinion also cites several old Pennsylvania cases decided before the passage of the Act of April 25, 1927, supra, all of which cry out against any participation by one of the parties in judging his own controversy.

"The judicial mind is so strongly against the propriety of allowing one of the parties, or its especial representative, to be judge or arbitrator in its own case, that even a strained interpretation will be resorted to if necessary to avoid that result": Ry. Conductors' Benefit Association v. Robinson, 147 Ill. 138, 159, 35 N. E. 168, 176 (1893).

We note that Black's Law Dictionary (4th Ed.), defines "Arbitrator" as follows:

"A private, *disinterested person*, chosen by the parties to a disputed question, for the purpose of hearing their contention, and giving judgment between them; . . ." (Italics supplied.)

We need no definitions or decisional law to opine that the original intent of the City of Bradford and these unions when they affixed their signatures to the agreement of December 31, 1968, was that if an honest and bona fide dispute arose between the parties, they would submit the same to three disinterested persons, let the chips fall where they may, and be bound by the ultimate decision of these three disinterested arbitrators.

It strikes us as inherently unfair for the City of Bradford to attempt to assure itself of an assured vote favorable to its position in this controversy by placing on the board of arbitrators the city manager

who obviously will vote in favor of a position already taken by the city.

If arbitration of disputes is to be encouraged, the city officials, the unions and, most important of all, the citizens of the municipality whose tax dollars are involved, must have the assurance that bona fide disputes will be resolved in an impartial, uncommitted, unpressured atmosphere. Arbitration agreements of this type should have the benefit of three conscientious fact finders and legal decision makers and should not resolve themselves to each party selecting a precommitted arbitrator and thus allowing the ultimate decision to be made by the third uncommitted arbitrator. The purpose and intent of this type of agreement is to select three open-minded, conscientious individuals who can listen with deference to the arguments of the parties, the views of fellow arbitrators, take into consideration applicable decisional law and then note the dictates of their judgment. There can be no place in this process for a vote tainted by a real or implied prior commitment.

We note in passing that at oral argument the City of Bradford implied that the unions in selecting their arbitrator have also placed on the board a precommitted arbitrator. The unions' arbitrator, William F. Potter, is the District Attorney of Bradford County and it is argued by the city that as district attorney he would naturally be favorable to police officers.

If the dispute involved a matter of police policy, law enforcement procedure, criminal proceedings or other matters directly concerning the relationship between the law enforcement department and the county prosecutor's office, we might accord some weight to the city's argument. However, here the city and the unions are involved in a strictly legal controversy involving a proper interpretation of a legal contract and its application to cost of living statistics

compiled by the United States Department of Commerce. We cannot conceive that attorney Potter, being bound by the Code of Professional Responsibility and Legal Ethics and being called upon to utilize his legal training to resolve this controversy, would compromise his professional responsibility as an attorney and an impartial arbitrator simply because in his elective capacity as district attorney he may occasionally be in contact with, and prosecute criminal cases brought by members of the police union.

The Act of April 25, 1927, supra, provides that the court shall designate and appoint an arbitrator if one of the arbitrators be disqualified to sit. Having determined that Robert W. Gehrig is disqualified as an arbitrator, the mandates of the act would apparently dictate that the court appoint someone in his place. The writer of this opinion was assigned by the Supreme Court to McKean County because of a vacancy existing on the bench due to the elevation of President Judge Glenn Mencer to the Commonwealth Court on April 15, 1970. It is obvious that as a visiting judge we lack personal knowledge at this time that would be necessary to fill this arbitration vacancy, which knowledge would be within the easy grasp of a "home county judge." Accordingly, we feel it best to accord the City of Bradford an opportunity to reappoint a disinterested arbitrator of their choice and upon their failure to do so, the court will then proceed under the Act of 1927 to fill the existing vacancy.

In accordance with the foregoing opinion, we enter the following

## ORDER

And now, July 1, 1970, the court rules as a matter of law that Robert W. Gehrig is not qualified to sit as an arbitrator under the agreement between the

City of Bradford and Local Union 655 and Lodge No. 67, dated December 31, 1968. The selection of Robert W. Gehrig by the city as an arbitrator is set aside.

The City of Bradford is given 20 days from the filing of this opinion and order to appoint a substitute arbitrator for Robert W. Gehrig, with the provision that said arbitrator appointed by the city shall be an impartial arbitrator and shall not be an employe of the city or any person serving in a paid or unpaid capacity on one of its boards, commissions or committees.

Upon failure of the City of Bradford to name an arbitrator, the court will designate an arbitrator to act for the city upon motion.

An exception is noted for the City of Bradford.