# CHARLESTON.

ROBINSON v. BROTHERHOOD OF RAILROAD TRAINMEN.

Submitted April 24, 1917.   Decided May 15, 1917.

1. INSURANCE — *Fraternal Benefit Societies — Construction of Certificates.*

   Fraternal benefit societies, in so far as they provide indemnity in case of disability or death of their members, legally are deemed mutual insurance companies, and their beneficiary certificates insurance contracts.   (p. 572).

2. SAME.

   Such certificates, together with the provisions of the constitution of the society applicable thereto, in general are to be interpreted as other insurance contracts, and the rights and obligations of the parties measured accordingly. They are to be given their plain, natural and obvious meaning and effect, when free from ambiguity. But the contract will liberally be construed to promote the benevolent objects of the society, and any doubt will be resolved in favor of the assured.   (p. 573).

3. SAME — *Fraternal Benefit Societies — Settlement of Disputes — Validity of Rules.*

   Fraternal benefit societies may establish and enforce reasonable rules and regulations for their government and for the settlement

of internal disputes as to property rights; and members must submit to and comply with such regulations, and exhaust their remedies within the order, before resorting to the civil courts for redress. (p. 575).

4. SAME—*Fraternal Benefit Societies—Right to Benefits—Conditions Precedent.*

Where the beneficiary certificates and constitution of the association provide that certain injuries shall constitute total and permanent disability entitling the member to payment of the full amount of his certificate, but that other claims for disability shall not create any legal liability or be the basis of a civil suit, but shall be determined by its beneficiary board, whose decision shall be final and conclusive, and a favorable finding a condition precedent to the right to receive benefits, such provisions will be upheld as valid regulations; and a decision of the board, made in good faith, will not be disturbed in any court of law. (p. 575).

Error to Circuit Court, Mineral County.

Assumpsit by Salem L. Robinson against the Brotherhood of Railroad Trainmen. Judgment for plaintiff on defendant's demurrer to evidence, and defendant brings error.

*Demurrer sustained, judgment entered for defendant.*

*Wm. MacDonald,* for plaintiff in error.

*Chas. Ritchie,* for defendant in error.

LYNCH, PRESIDENT:

Upon a demurrer to the evidence introduced by him on a trial in assumpsit, plaintiff, a railroad brakeman, recovered a judgment for the sum of $1500 against the Brotherhood of Railroad Trainmen, which it seeks to reverse upon this writ of error. Plaintiff bases his alleged right of recovery upon a beneficiary certificate issued to him by the grand lodge of the brotherhood April 24, 1912, and upon sections 68 and 70 of the constitution of that order. The injury averred consisted of the loss of three fingers from the right hand. In addition to the general issue entered, defendant asked but was denied leave to file a special plea setting up the decision of its beneficiary board under section 70, disallowing plaintiff's claim, as conclusive upon his right to a recovery in this action. The nature and existence of such liability, if any, is the sole question requiring consideration on this review.

The certificate sued on provides that plaintiff, a member of H. G. Buxton Lodge No. 758, "is entitled to all the rights, privileges and benefits of membership and to participate in the beneficiary department, class C, of said brotherhood to the amount set forth in the constitution thereof, which amount in the event of his total and permanent disability, as defined in section 68 of the constitution, shall be paid to him," or at his death to his wife if living, or if not to his personal representative. The certificate contains the express condition that the member receiving it "shall comply with the constitution, general rules and regulations now in force or that may hereafter be adopted by the within named brotherhood, which, as printed and published by the grand lodge of the said brotherhood, with the application for this certificate as signed by him and his medical examination, copies of which application and medical examination are attached hereto, all are made a part hereof, and together with this certificate constitute the contract between him and said brotherhood".

By the constitution of the grand lodge, in addition to various other funds, there is created a beneficiary fund, "to be disbursed exclusively in paying death, total and permanent disability and benevolent claims, as defined in sections 68, 69 and 70". In the maintenance of this fund all beneficiary members are required to participate by payment of monthly assessments levied upon them. For this purpose plaintiff was required to pay, and regularly did pay, an assessment of $2.50 per month. By virtue of section 60, "each certificate shall show in what class it is issued, and provide for the payment, in accordance with this constitution, of the full amount of such claims upon the death of the member insured therein, or upon his becoming totally and permanently disabled within the meaning of section 68." Sections 64 and 67 provide that the required proofs of death or disability shall be forwarded to the general secretary and treasurer within six months after the accident. Upon receipt of proof of death, "if the same shall be regular and satisfactory to said general secretary and treasurer, and the claim be by him deemed valid, the same shall be adjusted in its regular order" and the beneficiary "shall be entitled to receive from the beneficiary

fund the full amount of the class in which the certificate was issued.'' But ''if the general secretary and treasurer shall for any reason disapprove or reject such claim it shall be referred to the beneficiary board, who may approve or disapprove the claim; if approved it shall be assessed for and paid in its regular order. If disapproved by the beneficiary board, the claimant may appeal to the board of insurance, who may allow or disallow the claim, and its action shall be final''.

Section 68 is entitled ''total and permanent disability claims''. It provides that ''any beneficiary member in good standing who shall suffer the amputation or severance of an entire hand at or above the wrist joint, or who shall suffer the amputation or severance of an entire foot at or above the ankle joint, or who shall suffer the complete and permanent loss of sight of both eyes, shall be considered totally and permanently disabled, and shall thereby be entitled to receive, upon furnishing sufficient and satisfactory proofs of such total and permanent disability, the full amount of his beneficiary certificate, but not otherwise''. Formal written proofs of such disability, signed by the insured member, his attending physician and certain officers of the subordinate lodge, containing ''a statement setting forth the nature and extent of the injury and all proofs, including the beneficiary certificate of the member and his receipt for all dues and assessments for the month in which he was injured, shall be forwarded to the general secretary and treasurer, and if the same are found to be regular and satisfactory by him the claim shall be assessed for and paid in its regular order. But if the general secretary and treasurer shall for any reason disallow or reject said claim, it shall be referred to the beneficiary board, who may allow or disallow the claim. If allowed it shall be assessed for and paid in its regular order. If disallowed by the beneficiary board the claimant may appeal to the board of insurance, which may allow or disallow the claim, and its action shall be final''.

Section 70, upon which the declaration supporting the judgment is based, is entitled ''benevolent claims''. It is quoted in its entirety. ''All claims for disability not coming within

the provisions of section 68 shall be held to be addressed to the systematic benevolence of the brotherhood, and shall in no case be made the basis of any legal liability on the part of the brotherhood. Every such claim shall be referred to the beneficiary board, composed of the president, assistant president and general secretary and treasurer, who shall prescribe the character and decide as to the sufficiency of the proofs to be furnished by the claimant, and, if approved by said board, the claimant shall be paid an amount equal to the full amount of the certificate held by him, and such payment shall be considered a surrender and cancellation of such certificate, provided that the approval of said board shall be required as a condition precedent to the right of any such claimant to benefits hereunder; and it is agreed that this section may be pleaded in bar of any suit or action at law, or in equity, which may be commenced in any court to enforce the payment of any such claims. No appeal shall be allowed from the action of said board in any case; but the general secretary and treasurer shall report all disapproved claims made under this section to the board of insurance at its next annual meeting for such disposition as such board of insurance shall deem just and proper''. A brother desiring to present a claim under this section is required by section 71 to ''petition his lodge in writing upon the form provided by the general secretary and treasurer; said form must be properly executed by the claimant, and a regular practicing physician or surgeon, showing the condition of the brother and the basis of his claim. If approved by the lodge, the secretary shall forthwith forward them with notice of such approval to the general secretary and treasurer, who will at once forward to the lodge necessary blanks and instructions for presenting a claim''. By another section it is made the ''duty of the board of insurance to meet annually on the second Monday in January, at grand lodge headquarters, to consider and determine all death, and all total and permanent disability claims under section 68 which have been appealed to the said board, and all claims addressed to the systematic benevolence of the brotherhood which have been disapproved by the beneficiary board''. The decision of the board of insurance

''upon each claim appealed or referred to it shall be in writing, and shall be the final adjudication of any and all rights of such claimants or parties claiming any interest in or to the beneficiary certificate or the proceeds thereof. , The board shall have the power to approve or disapprove, or refer back to the beneficiary board for further consideration, any claim appealed to it. It shall also have the power to make allowances in disapproved or rejected claims, if such action is deemed by them advisable, provided that no such allowance shall exceed the amount of the beneficiary certificate of the member''. Under section 75, ''no suit or action at law or in equity shall ever be commenced upon any beneficiary certificate by any claimant until after he by appeal has exhausted all remedies provided for in this constitution''.

The declaration alleges, and the proof sufficiently shows, that at the time of his injury in March, 1914, plaintiff was in good standing in the brotherhood. He has also complied with all the conditions of his contract of insurance, and all the laws and regulations of the order. He has exhausted all the remedies provided in its constitution. Upon presentation to it of proofs of injury, in the manner and form prescribed by sections 70 and 71, the beneficiary board disallowed his claim for benefits; and this decision, on a reference had thereto, was sustained by the board of insurance, and payment of the claim refused ''as not proven''.

As disclosed by the foregoing and other provisions of its organic law, defendant is an unincorporated fraternal and mutual benefit society operating upon the lodge system. Its avowed purposes are ''to unite the railroad trainmen, to promote their general welfare and advance their interests social, moral and intellectual, and to protect their families by the exercise of a systematic benevolence''. One of its principal objects is to provide for the payment of stipulated sums to its members and their beneficiaries in the case of death or disability, upon prescribed conditions. Its governing bodies consist of a grand and subordinate lodges. It is the province of the grand lodge to prescribe and determine the rights, privileges and duties of the members of the society and the beneficiaries of deceased members. The subordinate lodges

are organized and maintained under and subject to the constitution and general laws of the order. The certificates issued by the grand lodge in its beneficiary department are in the nature of mutual benefit insurance available to its participating members, and the assessments made payable for the purpose of their liquidation are in the nature of premiums, nonpayment of which works a forfeiture of the insurance. With reference to the indemnity so provided for, such associations judicially are deemed in effect mutual insurance companies, and the certificates issued, together with the constitution, in so far as legally enforcible, insurance contracts. *Daniher* v. *Grand Lodge,* 10 Utah 110; *Prader* v. *Masonic Accident Association,* 95 Ia. 149; *Conductors' Benefit Association* v. *Robinson,* 147 Ill. 138; *Supreme Tent* v. *Raymond,* 57 Kan. 650. Frequently they are made the subject of extensive statutory regulation, similar to the provisions of chapter 55A, Code.

Clearly, the nature of plaintiff's injury did not entitle him to an award or recovery of benefits under section 68 of the constitution. For he did not suffer the amputation or severance of an entire hand or foot or the loss of the sight of both eyes. That section is clear and unambiguous, and there is no occasion to resort to any rule applicable to the construction or interpretation of doubtful language. It "does not cover the case of an amputation or severance of only a part of a hand, although the hand is permanently disabled for use in performing any manual service whatever". *Brotherhood of Railroad Trainmen* v. *Walsh,* 103 N. E. (Ohio) 759, wherein section 68 was construed and applied. Hence the liability of defendant, if any there be, is confined to section 70.

The contention of plaintiff, in assailing the validity of section 70, is that the decision of the tribunal thereby established to pass upon disability claims is practically an arbitration, and that an agreement to submit such a claim to arbitration in advance of a controversy is invalid, as against public policy, because its object and effect are to oust the courts of their jurisdiction. The soundness of the general principle so invoked, as thus broadly stated, can not be questioned. The correctness of that doctrine is not a question

*res nova* in this state.   In *Kinney* v. *Relief Association,* 35
W. Va. 385, cited by plaintiff, it was declared that "a provi-
sion in a contract that all differences arising under it shall
be submitted to arbitrators, thereafter to be chosen, will not
prevent a party from maintaining a suit, in the first instance,
to enforce his right under it".   From the opinion the clause
of the constitution of the association relied on for recovery
does not appear; but an examination of the record discloses
the existence therein of an absolute obligation to pay the
beneficiary a definite sum upon the death of the contributor,
and the dispute involved related to the existence of circum-
stances of fact touching the question whether the definite
liability expressed in the constitution had attached in the ·
given case.   So considered in the light of the facts upon
which it is based, this holding is not unsupported by other
decisions.   Indeed, the apparent weight of authority is to the
effect that provisions in the certificate or constitution of a
mutual benefit society, purporting to make decisions of its
own tribunals conclusive as to claims for benefits, are con-
trary to public policy and void, and will not preclude resort
to the civil courts for redress, if by its contract the society
assumes an absolute legal obligation to pay a definite sum
in a certain event or under certain conditions, and does not
merely engage to pay such benefits as may be awarded by its
officers. *Bauer* v. *Sampson Lodge,* 102 Ind. 262; *Woolsey* v.
*Independent Order,* 61 Ia. 492; *Lewis* v. *Brotherhood,* 194
Mass. 1; *Whitney* v. *Masonic Accident Association,* 52 Minn.
378; *McMahon* v. *Supreme Tent,* 151 Mo. 522; *Relief De-
partment* v. *White,* 41 Neb. 547; *Railroad Co.* v. *Stankard,*
56 Ohio 224 *Pepin* v. *Societe St. Jean Baptiste,* 23 R. I. 81;
*Daniher* v. *Grand Lodge,* 10 Utah 110.   In such case, the pro-
vision assailed will not be enforced.   Practically all of the
authorities relied on by plaintiff, some of them included in
these citations, fall within this class.   And, as shown by the
annotations to *Kelly* v. *Trimont Lodge,* 52 L. R. A. (N. S.)
823, in not a few decisions the validity of provisions or stip-
ulations making findings of the tribunals of the society di-
rectly upon claims for benefits conclusive, even where there
is an absolute obligation expressed in the certificate, and pre-

·cluding resort to the civil courts, are upheld and enforced as reasonable and proper regulations, self-imposed by the members of such voluntary organizations upon themselves for the benefit of the order as a whole and the better effectuation of its charitable objects.

But the claim here asserted falls within another distinct class of cases, requiring the application of a different rule. The basis of the difference lies in the voluntary character of the obligation assumed by defendant, as evidenced by section 70 of its constitution, which is expressly made a part of the contract sued on. The distinction is clearly drawn in *Whitney* v. *Masonic Accident Association,* 52 Minn. 378, wherein, after holding upon the facts proved that in a contract creating a definite obligation to pay a certain sum of money upon a specified contingency an agreement that the rights and obligations of the parties should be determined by arbitration without resort to a civil action is invalid, the court said: ''The case before us is distinguishable from those where the agreement provides only for the determination by arbitration of some particular fact or facts, as well as from cases where the contract expresses no obligation to pay any definite sum or to do any particular thing, but only to pay such sum or do such thing as shall be determined by the arbitrators. In such cases, and perhaps others, the principle of law which is decisive of the present case is not controlling''. The same distinction is noted with equal clarity in *Daniher* v. *Grand Lodge,* 10 Utah 110, where it is said that such a provision or agreement to submit is binding in the absence of fraud, although the court did observe that where the sum to be paid is definite the clause in the constitution of the order making the decision of a board of its own creation on the claims of members final and conclusive is legally ineffectual to bar an action on the contract. ''Such provisions have no more effect than a revocable agreement to submit to an award; because, otherwise, the attempt would be to usurp the functions of sovereign power, for it alone can create judicial tribunals''. So in *Robinson* v. *Templar Lodge,* 117 Cal. 375, where the constitution of the society provided that the provision for benefits should not be construed to create the re-

lation of debtor and creditor or any legal contractual rela-
tion enforcible by an action at law, the court said: ''The
defendant is not engaged in business for profit. It is a semi-
charitable institution. It collects dues from its members
merely to distribute to members in need, according to a plan
agreed to by all. It would seriously interfere with the use-
fulness of these mutual aid societies if their funds could be
tied up by endless litigation. * * The society has many
of the features of an organized charity, and it has been said
that the claim for a sick benefit is not a property right. In
short, the rules of law have not been applied to these institu-
tions with the same strictness with which they have been ap-
plied to corporations organized for profit. In an ordinary
case I should be loath to hold that one can effectually waive
his right to sue in a court of law before his right of action
has arisen, or that he can in advance agree to an arbitration;
but it has been so held with reference to these mutual ben-
efit societies, and, with reference to them, I think the regula-
tion reasonable''.

*Van Poucke* v. *St. Vincent De Paul Society*, 63 Mich. 378, is
a leading case on the question of liability when the right to
benefits is predicated upon a provision similar to the one be-
fore us. The defendant was an incorporated mutual bene-
fit society, formed for the purpose of raising a fund, through
monthly payments by its members, to assist its sick and needy
members, and, in case of death, to bear certain expenses of the
funeral. Its constitution and by-laws provided for a ''sick
committee'' to ''investigate and determine'' whether a mem-
ber was entitled to benefits on account of sickness, and that
they were to be ''the only and final deciders thereof''. The
sick benefit, stipulated to be paid when awarded by the com-
mittee, was five dollars a week during inability to work.
Plaintiff, a member of the society, was disabled by an injury
to his wrist, and received benefits to the amount of $25. There-
after complaint was made that he had resumed work, and he
was charged with receiving benefits when not entitled to them.
The sick committee, upon a hearing had, decided that he was
not entitled to receive any further benefits on account of
his injury, although plaintiff claimed that as a matter of fact

he was not then able to work by reason of the accident. In holding the by-law making the decision of the sick committee conclusive to be reasonable and valid, the court said: "If the by-law was reasonable and valid, not oppressive nor against public policy, it forms a part of the contract, and the plaintiff is bound by its terms. This was a mutual benefit co-operative insurance society. The members stood upon an equal footing, and this by-law operates upon all alike. It is reasonable that the sick committee should be invested with authority to determine whether a member claiming to be sick is entitled to the benefit provided for in the by-law, and also when such benefit should cease. In a society comprising a numerous membership, deriving its revenues from small monthly contributions, it is of the utmost importance that its business should be carried on inexpensively, and with a proper regard to the object sought to be accomplished. It is necessary that there should be some mode of determining the question of when relief should be given and denied, and the method provided for in the by-law seems well adapted to the circumstances and needs of such a society. There is nothing oppressive in the terms of the by-law, and it contains nothing which the policy of the law forbids. If it be enforced in good faith and with impartiality, which the members pledge themselves to do, it must result in benefit to sick members, and at the same time protect the funds of the society from depletion by the undeserving". Upon similar reasoning, this case was followed in the same state by *Canfield* v. *Knights of Maccabees,* 87 Mich. 626, and *Hembeau* v. *Knights of Maccabees,* 101 Mich. 161, upholding as valid a provision in the laws of the mutual benefit association there sued that the decision of a tribunal created by its constitution to pass upon death claims shall be final and bar any suit at law or in equity therefor.

By these decisions it was held competent for the society to enact a law, to which all parties assent, making a finding as to liability by its duly constituted committees a condition precedent to the right to receive benefits. Such power by a voluntary relief association organized by certain railroads for the benefit of their employees was sustained in *Pennsyl-*

*vania Company* v. *Reager,* 152 Ky. 824, in the holding that a
by-law or regulation of the association giving to its advisory
committee the right to pass upon the continued disability of
an employee, and making its decision final, is valid, and its
decision on such a question is conclusive in the absence of
a showing of fraud or mistake.   There the regulations in ques-
tion were held to amount to something more than a mere
agreement to submit future disputes to arbitration.   A favor-
able decision of the advisory committee was deemed a basic
condition and an essential part of the very right itself.   In
a similar case, *Nelson* v. *Railroad Co.,* 157 N. C. 194, making
a like holding, it was said that if the principles governing ar-
bitration and award were applicable, yet when a member of a
relief department of a railroad company has voluntarily
appealed to the advisory committee of the department, under
its rules and regulations, upon the question whether he was
able again to resume work, or should continue to receive the
sick benefits he had been drawing, "he will be presumed to
know the rules and regulations and to have acquiesced in this
method of adjustment, and is bound by the final decision of
the committee, made in good faith and without oppression or
fraud," He "can not be heard to complain of an adverse de-
cision of the advisory board upon a matter he has appealed
to it, under the rules and regulations of the department,
upon the ground of interest of the board in being selected by
the company, for he is presumed to know how the board was
constituted when he became a member and at the time he sub-
mitted his claim to its decision".   Its decision "that he had
sufficiently recovered of a sickness to resume work and cause
the cessation of the benefits he had been receiving can not be
collaterally attacked in an action brought in the courts".   In
the opinion will be found an elaborate discussion of the doc-
trine stated, and the conclusion that the rights of the par-
ties were not to be "determined strictly upon the principle
governing arbitration, because the plaintiff acquires his right
to the benefits he claims under the rules of the relief depart-
ment, and he has by contract attached to the enjoyment of
those benefits the condition that he will abide by all reason-
able regulations".   It was further observed that if it should

be held otherwise such societies would be subjected to litigation each time a member was dissatisfied, and funds raised for wise and beneficent purposes would be wasted.    So in *Anacosta* v. *Murbach*, 13 Md. 91, similar views were expressed: "The appellee, by becoming a member, assented to be governed by the Tribe and Council, according to the regulations, and it follows that he was bound by their application and construction in his own case.    It is provided that the Tribe shall determine matters of this kind, and the decision, on appeal, is made final.    These are private beneficial institutions operating on the members only, who for reasons of policy and convenience, affecting their welfare and perhaps their existence, adopt laws for their government, to be administered by themselves, to which every person who joins them assents.    They require the surrender of no right that a man may not waive, and are obligatory upon him only as long as he chooses to recognize their authority.    In the present instance, the party appears to have been subject to the general laws and by-laws according to the usual course, and if the tribunal of his own choice has decided against him he ought not to complain.    It would very much impair the usefulness of such institutions if they are to be harrassed by petty suits of this kind; and this, probably, was a controlling consideration in determining the manner of assessing benefits and passing upon the conduct of members".    Reasonable rules and regulations requiring claimants to submit their rights to the determination of designated officers in the investigation and allowance of benefits, and abide by their decision, will be upheld.    *Supreme Lodge* v. *Raymond*, 57 Kan. 647.    In general terms applicable to the defendant in the present case, it was held in *Brotherhood of Railroad Trainmen* v. *Swearingen*, 161 Ky. 665, involving a death claim under a certificate in class C like that held by plaintiff, that fraternal beneficial associations may by adopting a constitution and by-laws provide reasonable rules and regulations for settling their own disputes, and may establish their own tribunals of original, intermediate and appellate jurisdiction; and members must conform to their reasonable rules and regulations, and exhaust their remedies within the association, before the civil

courts will take cognizance of their grievances, even where a definite liability is expressed in the certificate of membership.

A further practical illustration of the same principle is found in *Rood* v. *Conductors' Mutual Benefit Association,* 31 Fed. 62. There the constitution of the organization provided that to a board of directors consisting of seven members "all claims against the association should be referred, and upon the approval of a majority of said board, with that of the president, the same shall be paid by the secretary and treasurer. * * They shall decide all points of dispute and questions of doubt that may arise, and their decision shall be final. * * Assessments shall be only made by authority of the board of directors". It was held that, after the decision of the board refusing payment of a death claim, no suit upon the claim could be maintained, on the principle that "the power of the directors in regard to the allowance of this claim, and ordering an assessment to pay it, is plenary. They are clothed with full authority to pass upon each and every claim presented against the association, and their decision is final. This is a purely voluntary association. The members of the association have, by their own organic law, provided a tribunal to hear and determine all claims against it, and I do not think any court can be invoked to review the action of the board in a matter so completely delegated to them. To attempt to enforce by suit any claim which the board of directors has acted upon, or refused to allow or approve, is equivalent to prosecuting an appeal from this board. It was certainly competent for the members of this association to agree among themselves that the action of their board of directors in reference to any claim presented against the association should be final; and there can be no doubt, from the language of the clause from the constitution just quoted, that they have so agreed. The duty of the board of directors is two-fold: first, to approve the claim, and, second, to order an assessment to pay it; and no member is under any obligation, express or implied, to pay an assessment for the liquidation of a claim against the association unless it has been approved by the board of directors and the assessment ordered by the board. It seems clear that the sole power of de-

termining whether the association should or should not pay a claim, and an assessment be ordered to pay it, is vested in this board of directors, and no court can review or re-examine their decision in that regard''.

The certificates and constitution of the defendant will be liberally construed to promote its benevolent objects; and in interpreting a doubtful provision the insured will be given the benefit of the doubt. *Brotherhood* v. *Corder,* 97 N. E. (Ind.) 125; *Lewis* v. *Accident Co.,* 194 Mass. 1; *Bond* v. *Brotherhood of Railroad Trainmen,* 165 Ill. App. 491; *Convery* v. *Brotherhood of Railroad Trainmen,* 190 Ill. App. 479.    The certificate is to be considered in connection with the constitution and by-laws, the same as though all these documents were combined in one.    But, on the principle that the agreement evidenced by such documents is a contract of indemnity, their provisions, as in the case of any other contract of insurance, are to be construed according to their plain and obvious meaning and with a view to accomplish the purposes for which the association is maintained.    *Conductors' Benefit Association* v. *Robinson,* 147 Ill. 138; *Brotherhood* v. *Aday,* 134 S. W. (Ark.) 928.

Thus treating and construing the certificate issued to plaintiff and the constitution of defendant as embodying the contract between them, it is obvious no legal liability enforcible at law has arisen in this instance. This conclusion is inevitable from the nature of the brotherhood and the character of the obligation it has assumed, and is fully sustained by the decision cited.    To these might be added many others of similar conclusiveness.

Nor is ample authority wanting expressly so construing the pertinent provisions of the constitution of the brotherhood which is the defendant in this action.    In *Eighmy* v. *Brotherhood of Railroad Trainmen,* 113 Ia. 681, a conductor, who had lost the sight of one eye, sued the brotherhood under a certificate in class C in its beneficiary department.    Section 44 of the constitution of the organization then provided that any member in good standing suffering the loss of an entire hand or foot or the sight of both eyes should be considered totally and permanently disabled and entitled to re-

ceive the full amount of his certificate, but that other claims for total disability should be referred to designated officers, "who shall decide as to whether or not the disability is of such nature as to totally and permanently incapacitate the claimant from the performance of duty in any department of the train or yard service, and if the claim be approved by them the claimant shall receive the full amount of the beneficiary certificate". The conclusion of the court, expressed in the single point of the syllabus, was that "the decision of such officers as to whether an injury sustained by a member totally disabled him is a condition precedent to his recovery in an action on the certificate". In the opinion it was said: "It will be observed that by the terms of the certificate indemnity is pledged in event of total and permanent disability, and that whether the claimant is so disabled is to be ascertained from article 44 of the constitution. The latter enumerates certain injuries which shall be considered to totally disable, and also pledges indemnity for others which may be found by officers named so to do. Misfortunes not mentioned may as completely disqualify trainmen for service, and because of this protection is afforded to those who have suffered injury other than as specified of such a nature as 'to totally and permanently incapacitate the claimant for the performance of duty in any department of the train or yard service'. Unless so found, no indemnity is stipulated. Not for total disability resulting from injuries other than those specified, but for those decided to be such by the grand master, vice grand master and grand secretary, is there any benefit stipulated. The condition is similar to one making a reference and finding a condition precedent to payment". In enforcing a like construction of the same general provision of the constitution, it was said in *Sanderson* v. *Brotherhood of Railroad Trainmen*, 204 Pa. 182: "The constitution of the order provides a tribunal to decide the very question now in controversy in this case, namely, whether or not the plaintiff's claim amounted to total disability. In accepting the certificate, the plaintiff agreed, with the other members of the beneficial order, that he would submit this question to the tribunal so constituted. It was a tribunal of his own

choice. It was doubtless provided for the express purpose of
preventing litigation, and thereby to prevent the funds of the
order from being taken and used in defending suits. It is to
the interest of every member of the order that this regula-
tion should be enforced. In our opinion, the decision of such
tribunal is conclusive upon the plaintiff, and the merits of
the decision can not be inquired into collaterally, either by
action at law or any other mode''.

We can not assent to the exceptional interpretation of the
certificates and constitution of the defendant made by the
fourth district appellate court of Illinois in *Bond* v. *Brother-
hood of Railroad Trainmen,* 165 Ill. App. 490, followed by
the later case of *Convery* v. *Brotherhood,* 190 Ill. App. 479,
whereby such certificates are given the effect of an absolute
and enforcible legal obligation to pay a sum certain in any
case of total and permanent disability of the member.
Avowedly, that was a strained construction, made to avoid
the otherwise conclusive effect of the decision of the benefi-
ciary board under section 70, as sustained by the overwhelm-
ing weight of authority. Apparently the question of liabil-
ity under these certificates has not been determined by the
supreme court of Illinois. But that court did hold in *Con-
ductors' Benefit Association* v. *Robinson,* 147 Ill. 138, that,
although generally when one of the parties is sought to be
made the final judge as to the rights involved the courts will
not give such a construction to a contract as to have that
effect if it is possible to give any other, yet ''it is competent
for members of benefit societies to so contract that their
rights as members shall depend upon the determination of
a tribunal of their own choice, which shall be conclusive''.
The true rule in determining the question of liability, we
think, was applied in *Pool* v. *Brotherhood of Railroad Train-
men,* 143 Cal. 650, where, after rejection of his claim by the
beneficiary board, plaintiff, whose alleged disability resulted
from an injury to his spine, was denied recovery under a
section of the constitution of defendant in the same language
of section 70 now before us. After holding that ''his right to
recover must be measured by his contract, which must be read
with the constitution and by-laws of the association, to which

he has agreed'', the court said: ''Plaintiff agreed that his claim should be 'addressed to the systematic benevolence of the brotherhood and shall in no case be made the basis of any legal liability on the part of the brotherhood'. We must apply the ordinary rules governing contracts to the agreement made by the defendant with plaintiff in this case. He was guaranteed to be paid a certain sum in case of total disability from the causes set forth in section 45 of the constitution. He paid for and was insured against the loss of a hand or a foot or of both eyes. His contract was absolute in case his disability had been permanent and caused in the manner defined in the last-cited section. In other cases the claim was of a purely benevolent nature. The beneficiary board had the power to allow it or reject it, but no duty was imposed upon such board to allow it. If the board reject such claim, the claimant may have it acted upon by the next biennial convention, and the convention may make such disposition of it as may be deemed just and proper. We know of no reason why such a contract may not be made. The plaintiff was not compelled to become a member of defendant, but, having become such member, he must show a legal liability within the terms of his contract before he can recover in court''. It is difficult to perceive, if a different construction were adopted, upon what principles of law the exact nature of plaintiff's right and the measure of his recovery could be determined. The question is not one of procedure merely, but of the very existence of the right asserted. But no legal right is shown; and the courts can not make a contract for the parties where they have made none for themselves.

It may be, as impliedly intimated in *Daniher* v. *Grand Lodge*, 10 Utah 110; *Nelson* v. *Railroad Co.*, 157 N. C. 194; *Pennsylvania Co.* v. *Reager*, 152 Ky. 824; *Supreme Lodge* v. *Raymond*, 57 Kan. 651, and *Van Poucke* v. *St. Vincent De Paul Society*, 63 Mich. 378, that in a proper case, upon adequate proof, a member whose claim has been disallowed may recover at law because of arbitrary or oppressive action on the part of the beneficiary board. But no such case is made here. If the declaration be deemed sufficient to admit proof of this kind, the testimony offered in support of the vague

averment that the board "arbitrarily refused to pay" plaintiff's claim is wholly insufficient to warrant a disturbance of its finding. That testimony consists merely of the statements by two witnesses that as members of the brotherhood they were allowed the full amount of their certificates under section 70 of its constitution, in the one case for "falling sickness or epileptic trouble", in the other for ankloid or stiff ankle. No other facts were proved touching the propriety or *bona fides* of the decision of the beneficiary board on plaintiff's claim, save those relating to the nature and manner of his injury. The mode of the accident itself properly may have been deemed an important consideration by the board bearing upon the worthiness of plaintiff to receive the benefits he sought. Apparently he was not wholly free from fault. The accident occurred while he was climbing over a freight train which blocked a crossing on his way home. It was near midnight, and the train was moving at the rate of five or six miles an hour. Plaintiff fell from the train, and his fingers were caught on the track and severed by the wheels of the moving car. He admits that he had two drinks of liquor early that evening, which made him "feel out of the ordinary for a while"; and there is other evidence tending to show his intoxication at the time he was hurt. Under these circumstances, without any further showing, clearly it can not be said the action of the beneficiary board was arbitrary or oppressive.

The special plea tendered by defendant and rejected presented defensive matters appropriate to the attainment of just results upon a full inquiry into the merits; but the conclusion reached renders the rejection harmless. In conformity with the practice and procedure of this court upon writs assigning as erroneous rulings on demurrer to evidence, as approved and applied in *McNeer* v. *Railway Co.*, 76 W. Va. 803, and entering such judgment as the trial court should have entered, we sustain the demurrer, enter a *nil capiat* judgment against plaintiff, and award defendant the costs incurred in defense of the action in each court.

*Demurrer sustained, judgment entered for defendant.*