13997

ELLIS v. GRAND LODGE, BROTHERHOOD OF R. R.
TRAINMEN *ET AL.*

(179 S. E., 310)

*Messrs. E. S. Oliver* and *Melton & Belser,* for appellants,

*Messrs. Baker & Baker,* for respondent,

February, 1935.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

On July 1, 1927, the Grand Lodge, Brotherhood of Railroad Trainmen, issued to John O. Ellis, one of its members, a certificate of insurance for $5,000.00, to be paid to him in case he should become totally and permanently disabled, as defined by Section 68 of the constitution of the order, or at his death to his son, Artemus Ellis, if then living. It was also provided that the constitution, by-laws, etc., together with the certificate, should constitute the contract between Ellis and the lödge.

On December 28, 1927, the insured sustained a severe gunshot wound in his neck, rendering him, as he contended, totally and permanently disabled. Thereafter he filed with the defendant a claim for disability benefits under Section 70 of the Constitution, which provides that "all claims for disability not coming within the provisions of Section 68 shall be held to be addressed to the systematic benevolence of the Brotherhood." The claim was disallowed by the beneficiary board, whose action was approved by the board of insurance. Later a second petition for such benefits met with the same result.

Ellis then brought this action, in which he seeks to recover the full amount named. He alleged, *inter alia,* that the attempted definition and limitation of liability for total and permanent disability, as set out in Section 68 of the constitution, will not defeat his right to payment of disability benefits under Section 70. It was further alleged that the conduct of the brotherhood, in refusing to allow the insured's claim, was contrary to the provisions of the last-named section, and was capricious and unreasonable. The defendant, answering the complaint, denied that it had

acted arbitrarily in the matter, and alleged "that the plaintiff has never made any claim under Section 68 and his condition, as shown in his several petitions for benefits, together with physicians' certificates attached thereto, has not brought his case within said section, but he has, on the other hand, applied for benefits under Section 70, appealing to the systematic benevolence of the brotherhood and, his claims having been fully considered in each instance and disapproved, the plaintiff has no cause of action whatever against the defendant."

On trial of the case, in the Court of Common Pleas for Florence County, the presiding Judge refused the defendant's motion for a nonsuit and submitted to the jury the issue whether the lodge had acted in an arbitrary or capricious manner in refusing the claim. A verdict for the full amount was returned for plaintiff, and the defendant appealed. Several assignments of error are made by the exceptions, but it is agreed that the basic question presented for our consideration is whether, under Section 70, the respondent has any *legal* claim whatsoever for disability benefits, and, under the view taken by the Court, a decision of that question will dispose of the appeal.

Section 68 of defendant's constitution reads as follows: "Any beneficiary member in good standing who shall suffer the amputation or severance of an entire hand at or above the wrist joint, or who shall suffer the amputation or severance of an entire foot at or above the ankle joint, or who shall suffer the complete and permanent loss of sight of one or both eyes, or upon becoming seventy (70) years of age, shall be considered totally and permanently disabled, but not otherwise, and shall thereby be entitled to receive, upon furnishing sufficient and satisfactory proofs of such total and permanent disability, the full amount of his beneficiary certificate. A disabled member paid under this Section shall automatically become a non-beneficiary member beginning with the month following the month in which his claim was

approved providing he pays such dues and assessments that are required from non-beneficiary members."

Section 70, having to do with benevolent claims, provides: "All claims for disability not coming within the provisions of Section 68 shall be held to be addressed to the systematic benevolence of the Brotherhood, and shall in no case be made the basis of any legal liability on the part of the Brotherhood. Every such claim shall be referred to the Beneficiary Board, composed of the president, assistant to the president, and general secretary and treasurer, who shall prescribe the character and decide as to the sufficiency of the proofs to be furnished by the claimant, and if approved by said board, the claimant shall be paid an amount equal to the full amount of the certificate held by him, and such payment shall be considered a surrender and cancellation of such certificate, provided that the approval of said board shall be required as a condition precedent to the right of any such claimant to benefits hereunder and it is agreed that this section may be pleaded in bar of any suit or action at law, or in equity, which may be commenced in any Court to enforce the payment of any such claims. No appeal shall be allowed from the action of said Board in any case; but the General Secretary and Treasurer shall report all disapproved claims made under this section to the Board of Insurance at its next annual meeting for such disposition as such Board of Insurance shall deem just and proper."

We find no decision of this Court, and none has been cited us, construing the constitution of the defendant in this case, or deciding the exact question here involved; but it seems to be uniformly held in those jurisdiction where the question has been before the Courts that there is no legal liability on the part of the brotherhood for failing to allow a claim filed under Section 70 of the constitution, for the reason that this section expressly provides that claims so filed can in no case be made the basis of such liability and that there

is no question of capriciousness or unreasonableness involved.

In *Pool v. Brotherhood of Railroad Trainmen,* 143 Cal., 650, 77 P., 661, 662, the Court considered and decided the identical question here presented. It appears that Pool's claim, as in the case at bar, was not filed under the section of the constitution which defined total and permanent disability, but was based upon the section which provided for benevolent claims. The Court said:

"Plaintiff agreed that his claim should be 'addressed to the systematic benevolence of the Brotherhood and shall in no case be made the basis of any legal liability on the part of the Brotherhood.' We must apply the ordinary rules governing contracts to the agreement made by the defendant with plaintiff in this case. He was guarantied to be paid a certain sum in case of total disability from the causes set forth in Section 45 of the constitution. He paid for and was insured against the loss of a hand or a foot or of both eyes. His contract was absolute in case his disability had been permanent and caused in the manner defined in the last-cited section.

"In other cases the claim was of a purely benevolent nature. The beneficiary board had the power to allow it or reject it, but no duty was imposed upon such board to allow it. If the board reject such claim, the claimant may have it acted upon by the next biennial convention, and the convention may make such disposition of it as may be deemed just and proper. We know of no reason why such contract may not be made. The plaintiff was not compelled to become a member of defendant, but, having become such member, he must show a legal liability within the terms of his contract before he can recover in Court."

In *Robinson v. Brotherhood of Railroad Trainmen,* 80 W. Va., 567, 92 S. E., 730, 735, L. R. A., 1917-E, 995, where the question before us was fully and lucidly treated, the Court observed: "The certificates and constitution of

the defendant will be liberally construed to promote its benevolent objects; and in interpreting a doubtful provision the insured will be given the benefit of the doubt. * * * The certificate is to be considered in connection with the constitution and by-laws, the same as though all these documents were combined in one. But, on the principle that the agreement evidenced by such documents is a contract of indemnity, their provisions, as in the case of any other contract of insurance, are to be construed according to their plain and obvious meaning and with a view to accomplish the purposes for which the association is maintained"—and held: "Thus treating and construing the certificate issued to plaintiff and the constitution of defendant as embodying the contract between them, it is obvious no legal liability enforceable at law has arisen in this instance. This conclusion is inevitable from the nature of the brotherhood and the character of the obligation it has assumed."

This question was also considered in *Grand Lodge, Brotherhood of Railroad Trainmen, v. Smith,* 129 Miss., 738, 92 So., 837, 839, 27 A. L. R., 863. The insured there, as in the case before us, based his claim on Section 70 of the constitution of the order, and not on Section 68. The trial Court refused to direct a verdict in favor of the lodge. On appeal the Supreme Court, after pointing out and commenting on the provisions of these sections, said: "But, so far as the question here involved is concerned, we see no difficulty in said constitutional provisions, even without the help of authority from other states. There is nothing whatever either in the constitution or laws of appellant, in conflict with or which broadens the meaning of said sections 68 and 70 of its constitution to the extent of giving appellee any contract right for his disability. And those two sections in unmistakable terms provide that there shall be no liability whatever on the part of appellant for any permanent and total disability except that provided for in Section 68. And Section 70, taken alone, in equally plain terms provides that

claims by members for any other permanent and total disability shall be addressed alone to the benevolence of appellant society, for which there shall be no legal liability on the part of appellant. This amounts simply to an invitation on the part of appellant to appellee that, if he shall suffer a permanent and total disability other than that provided for in said Section 68, appellant will hear his application for a donation, which it will grant or not as it sees fit, expressly providing that there shall be no liability either at law or equity for such disability. Construing appellant's constitution, laws, and beneficiary certificates most strongly against it, as argued should be done, they mean that, and nothing more, so far as the question here is concerned. Appellee accepted a contract by the plain terms of which there is no liability to him by appellant for the disability he suffered; and we are unable to see any reason why he should not be bound by it. The decision of this question goes to the root of the whole case, and renders it unnecessary to decide the question whether a party to a contract can bargain away his right to resort to the Courts, for, if he has no rights, there is nothing to contract away."

The case is reported in 27 A. L. R., 863, where will be found, beginning at page 869, an excellent and helpful annotation.

*Kelly v. Brotherhood of Railroad Trainmen,* 308 Ill., 508, 140 N. E., 5, 9, 29 A. L. R., 243, is to the same effect. A different rule had prevailed theretofore in Illinois, but in the *Kelly case* the Supreme Court of that state, in line with decisions of other jurisdictions, arrived at the following conclusion: "The contract does not provide in Section 70 for the payment of any certain sum of money upon the happening of any event. It provides only for an appeal to the systematic benevolence of the society in cases in which no legal liability exists, and for a payment to be made upon the approval of the beneficiary board only in cases of the character and sufficiency of which the board shall decide.

There is no reason why the members of the society may not agree among themselves that members having no legal claim under their contracts upon the society, and yet who suffered disability, may not apply to the beneficiary board for relief and be bound by its decision." See, also, *Welsh v. Brotherhood of Railroad Trainmen,* 200 N. C., 184, 156 S. E., 539; *Mady v. Switchmen's Union of North America,* 116 Minn., 147, 133 N. W., 472, 45 C. J., 230, and cases cited.

Very little may be added, without repetition, to what is said in the cases above cited. As we have stated, the constitution and by-laws of the order, together with the beneficiary certificate, constituted the contract between the parties. The certificates contains no provision for benefits for total and permanent disability except as such disability is defined in Section 68 of the constitution. That section provides, as is seen, that any beneficiary member in good standing, who shall suffer the amputation of an entire hand or of an entire foot or the complete and permanent loss of the sight of one eye or of both or upon becoming 70 years of age shall be considered totally and permanently disabled, *but not otherwise.* Section 70 of the constitution, which is not mentioned in the certificate, provides that all claims for total and permanent disability not coming within the provision of Section 68 are addressed to the systematic benevolence of the brotherhood, and for which there shall be no legal liability on the part of the society. There is no ambiguity in the language used; the meaning is clear and the intent of the parties certain. The plaintiff entered into such a contract, which he had a right to do, and is bound by its terms. As stated in the *Robinson case, supra,* "It is difficult to perceive, if a different construction were adopted, upon which principles of law the exact nature of plaintiff's right and the measure of his recovery could be determined. The question is not one of procedure merely, but of the very existence of the right asserted. But

no legal right is shown; and the Courts cannot make a contract for the parties where they have made none for themselves."

As the insured, as we hold, had no vested rights under ■ Section 70 of the constitution, it is clear ·that the question whether the brotherhood acted in a capricious or unreasonable manner in refusing plaintiff's claim, does not enter into the case, and the Court was in error in submitting that issue to the jury. As stated in *Pool v. Brotherhood of Railroad Trainmen, supra* "This is not a case of an arbitrary adjudication of the officers of a benevolent association, declaring a forfeiture of property or of vested rights. It is simply the rejection of a claim that the lodge might in its charity have allowed, but it was agreed that such claim should be in the discretion of the lodge and not the basis of legal liabilty. Plaintiff may have been unfortunate in becoming a member of a brotherhood that is not benevolent, but the Court cannot undo his actions in this regard."

The plaintiff lays much stress on the use of the word "systematic" in connection with the word "benevolence" in Section 70 of the defendant's constitution. The contention seems to be that a systematic benevolence denotes more than a mere benevolence, and that the defendant order has a right to refuse benefits under Section 70 in the exercise of such benevolence only if it acts reasonably and in good faith. We have considered with care the argument of counsel, but do not think that the use of the word "systematic," as describing the benevolence of the order to which such claims are required to be addressed, may be held to nullify or destroy the meaning of the express language contained in Section 70, to the effect that such claim "shall in no case be made the basis of any· legal liability on the part of the Brotherhood." Furthermore, we are of opinion that the word "systematic," as used, was merely intended to convey the idea that all such claims would be considered and disposed

of in the manner and by the method prescribed by the rules and regulations of the society.

The respondent appears to rely to some extent on *Ellis v. A. C. L. Railroad Co.,* 172 S. C., 338, 174 S. E., 19, 20. This case, however, does not seem to be in point. The question there was whether one is required to exhaust all his remedies within the organization before resorting to the Courts. It was held "that the greater weight of the authority is in favor of that which holds that a regulation of this sort cannot debar one from his legal right to apply to the Courts for redress of wrongs or the enforcement of rights." The question before the Court in the present case, as we have said, is whether the insured has any legal right at all to disability benefits, in view of the fact that Section 70 under which he claims expressly provides that such claim shall not constitute the basis of any legal liability on the part of the brotherhood. This question, as pointed out in the *Robinson case, supra,* "is not one of precedure merely, but of the very existence of the right asserted."

The judgment of the lower Court is reversed, and the case remanded, with instructions that a nonsuit be entered up for the defendant under Rule 27 of this Court.

MESSRS. JUSTICES CARTER and BONHAM concur.

MR. ACTING ASSOCIATE JUSTICE C. T. GRAYDON (dissenting):

Not being able to concur in the majority opinion of the Court, I respectfully submit my reasons for dissent as briefly as possible.

The facts surrounding this transaction have been sufficiently set forth in the majority opinion to give a clear and intelligent grasp of the situation.

The whole case revolves around two provisions in the constitution of the Grand Lodge, Brotherhood of Railway Trainmen. Under Section 68 there are specific grounds of disability set forth and then another section of the constitution, Section 70, says, in effect, that all claims for liability

not coming within the terms of Section 68 are addressed to the systematic benevolence of the brotherhood. Exactly what this systematic benevolence is does not appear in the record, but from the entire case it seems that the power that dispenses the systematic benevolence under Section 70 is granted arbitrary control thereof by the constitution and by the interpretation placed by the Courts. In other words, the brotherhood claims that, if two men are injured in exactly the same fashion and receive exactly the same injuries, in the one case the brotherhood could grant payments and the other case withhold them. The contention is that it is entirely a matter within the discretion of this board, and in this I cannot agree.

The so-called systematic benevolence is a privilege sold to the policyholder for valuable consideration, and I cannot see how this paid-for privilege can be converted into pure charity or benevolence by this method. It would seem to me that, if this is the fact, old line insurance companies could put a similar clause in their policies and give their officers the right to pass upon the validity of the claim of the policyholder.

Section 70 says: "That the approval of the Board shall be required as a condition precedent to *the right* of any such claimant to any such benefit hereunder." (Italics added.) This recognizes the right which accrues to the plaintiff, for, if the claim is approved, then by the wording of the constitution of the association it becomes a right, and this power is to be exercised with a "systematic benevolence." I cannot escape the conclusion that a judgment which is arbitrary and which can be exercised capriously by the officers could not be systematic, and therefore that the word "systematic" at least is a misnomer.

This Court has held in repeated instances that, when the exercise of judgment or discretion is vested by law or contract in an individual or a governing body, a reservation is implied by law that the same must be exercised in good faith

and reasonably. *Clarkson v. Supreme Lodge, K. of P.*, 99 S. C., 134, 82 S. E., 1043.

It seems to me that the decision in the *Clarkson case* would have to be limited or overruled by the decision herein rendered.

This rule has been definitely held in cases of old line insurance where the Court has said that "evidence satisfactory to the company" does not mean that the company has power to act in its discretion in the consideration of such evidence, but the Court goes on and further holds that, if evidence submitted in the light of common sense and reason is sufficient, the company cannot act arbitrarily or capriciously. *Lane v. N. Y. Life Ins. Co.,,* 147 S. C., 333, 145 S. E., 196.

This Court has held that an arbitration entered into is binding provided the arbiter does not act in bad faith but recognizes that the ultimate decision in the matter rests with the Courts. *Jones v. Power Co.*, 92 S. C., 263, 75 S. E., 452, Ann. Cas., 1914-B, 293.

If Section 70 is construed as contended for by the appellant, then it seems to me that the above-cited cases are practically overruled or that at least the doctrine therein announced is limited to a large degree. I think that the Courts are and should be reluctant to disturb the honest decision of a governing body which has power vested in it to decide matters in connection with its organization, but I cannot conclude that this authority should be free from supervision by the Courts.

Fraternal insurance has assumed quite a different complexion within the last few years. Formerly the insurance was merely an adjunct to the fraternal feature for the purpose of protecting and helping its members in times of distress. The modern tendency has been that fraternal insurance companies are more and more operating upon the basis of old line companies and less and less upon the basis of fraternal organizations. The premiums charged are in many cases ample to warrant the issuance of a stable contract, and the Courts should protect the members of the

organization in the same manner that policyholders are protected under old line insurance. The right of the Grand Lodges to change the constitution and by-laws, to increase the assessments and decrease the face value of the policies issued, should be denied. The policyholder generally has no voice in these meetings where the changes are made, and often does not even know about the changes until something happens to bring the matter to his attention. The word "insurance" has a peculiar meaning to me, and the important part of the word is "sure," and this part should be left in with all of its full significance.

Of course, I realize that it is the province of the Legislature to correct many of these evils and that the Court has no power to go into these matters, but I am simply calling attention to them at this time.

I have not attempted to go fully into the matter, but, under my construction of the policy, the pleadings, and the proof, I think that a jury question was raised, and, having been decided by the jury, under our system of jurisprudence, it should not be disturbed.

I am of opinion that the judgment should be affirmed, and therefore I respectfully dissent.