*256
 
 Marshall, C. J.
 

 The Order of Railway Conductors of America is a labor organization, and is a voluntary unincorporated association of national scope, with general offices and business location at Cedar Rapids, Iowa. Harry L. Carpenter was a member of the order in good standing and the holder of a certificate of membership in the mutual benefit department of the order, and, being injured in the service, brought suit in the common pleas court of Hamilton county to recover upon such certificate of membership in the sum of $2,000, being the total liability upon the certificate. The application for membership was dated August 16, 1918, and the certificate bears date August 31, 1918. A jury was waived and the case submitted to the court upon a stipulation and agreed statement of facts.
 

 Carpenter was injured while in the service on April 7, 1922, by reason whereof he “has been and is so permanently disabled as to be incapable of properly supporting himself and his dependents.” The injuries were to his leg, but there was no amputation or severance of any portion of the foot or leg; “the particular injury being a broken arch and other injuries to left ankle and leg.” Carpenter was at the time employed by the Baltimore & Ohio Railroad Company, and received from that company on account of his injuries the sum of $400. The court of common pleas dismissed the action, and on error proceedings the Court of Appeals reversed that judgment, The cause was admitted to this court upon a motion to certify the record.
 

 There is involved an interpretation of the cer
 
 *257
 
 tifieate of membership and the laws of the order of railway conductors, and, more especially, that portion of the laws relating to the payment of benefits by the mutual benefit department. The laws of the order, the membership certificate, and the application signed by the member, are, by the terms of each and all of those instruments, to be considered and construed together as making up the entire contract between the order and the member. The application contained the following provision :
 

 "It is hereby covenanted, declared and agreed, that all the statements and answers contained in this application for membership, and in the report of the physician who examines the applicant, which is hereby made a part of this application, shall, together with the laws, governing the mutual benefit department of the Order of Railway Conductors of America, now in force, or which may be adopted hereafter, be the basis, and form a part of the contract between the applicant and the said mutual benefit department.”
 

 The application contains the further provision that on all questions arising out of claims for benefits the decision of the executive head of the department will be accepted as final. The certificate of membership likewise makes the application and laws of the order component parts of an entire contract, and contains the further provision:
 

 "It is distinctly declared, covenanted and agreed, that this certificate is but evidence of membership in the said mutual benefit department, and that it in no sense and at no time promises or agrees to anything that is not dependent at all times upon
 
 *258
 
 the laws of the said mutual benefit department as they may be legally adopted from time to time.”
 

 Summarizing the provisions of the membership certificate, it promises and agrees to pay $2,000 to the named beneficiaries in ease of death, and the like sum of $2,000 to the beneficiary himself in the event of his becoming disabled, “as specified in the laws of said mutual benefit department in force at the time the disability occurs, so as to entitle him to disability benefit.”
 

 Those portions of the laws of the order governing the mutual benefit department necessary to be referred to are found in Articles 17, 18, and 19. Article 17 refers to death claims, and is of course not in any sense involved. Article 18 is entitled “Disability Claims,” and provides:
 

 “If any member of this , department becomes disabled by the amputation or severance of the entire hand at or above the wrist joint; by the amputation or severance of the entire foot at or above the ankle joint; by the total loss of eyesight, * * * or by the total loss of the sense of hearing”—then the order shall become obligated to pay the entire amount of the membership certificate.
 

 It being admitted that there was no amputation or loss of sight or hearing, it is not claimed that that article governs the present controversy. It is conceded by both parties that the controversy turns primarily upon the interpretation of Article 19, entitled “Disability Insurance Benevolence.” The pertinent portions of that article are:
 

 “Any mutual benefit department member claiming permanent disability which is not covered by
 
 *259
 
 the provisions of Article 18 of the laws governing the mutual benefit department, may present his claim to the benevolence board, which said board shall be composed of the president, vice president and secretary of the mutual benefit department. * * * And it shall decide as to the sufficiency of the proofs and of the claim, and if the claim is approved by the said board, the member making such claim shall be paid the face value of the certificate. * * * No member shall have any claim enforceable in law or in equity against the mutual benefit department by reason of the provisions of this article. What shall constitute a disability under the provisions of this article shall rest within the discretion of and be determined by the said benevolence board, subject to an appeal, as herein provided, and subject to the provision that no such claim shall be allowed unless the claimant, in the judgment of said board, is so permanently disabled as to be incapable of properly supporting himself and his dependents.”
 

 By comparing the provisions of Articles 17 and 18 with the provisions of Article 19, it will be seen that 17 and 18 contain definite promises to pay upon the happening of certain events. It is quite clear that none of those events has happened. The applicant is still living, and has not suffered any amputations, or loss of sight or hearing. It is equally certain that Article 19 contains no promise to pay. It is conceded that applicant’s claim, whatever that claim may be, must arise under the provisions of Article 19. It is also conceded that that article unaided by any other provisions would not amount to a promise to pay,
 
 *260
 
 but it is contended by tbe applicant that the certificate of membership aids the provisions of Article 19, and that when the two instruments are construed together a definite promise to pay results.
 

 The certificate of membership makes no reference to any particular articles of the laws of the order, but it does contain the definite promise to pay the sum of $2,000 in case of death, and contains the further definite promise to pay the same amount “in the event of said Harry Lee Carpenter becoming disabled, as specified in the
 
 laws of said mutual benefit department
 
 in force at the time the disability occurs.” If that promise was unqualified, or if it refers to Article 19, he would be entitled to a judgment in this case. There are two difficulties in the way of such recovery: First, that that promise is not unqualified, but, on the contrary, that particular paragraph is qualified by the next succeeding paragraph, which states that the certificate is but evidence of membership in the mutual benefit department; and, second, that paragraph “in no sense and at no time promises or agrees to anything that is not dependent at all times upon the laws of the said mutual benefit department as they may be legally adopted from time to time.”
 

 Under the repeated decisions of this court construing fraternal and beneficial insurance, the membership certificate and the laws of the order are to be construed together as one harmonious whole, and it is inconceivable that the definite promise to pay contained in the membership certificate could have been meant to modify the pro
 
 *261
 
 visions of Article 19, which clearly refute and disclaim any such promise. That it was not intended to make any promises beyond Articles 17 and 18 is evidenced by the qualifying and limiting language above quoted from the certificate itself.
 

 Applicant filed his proof of disability on November 2, 1922, and his claim for disability benefits was refused and the claim dismissed by the unanimous concurrence of the benevolence board on November 18, 1922. Thereafter on December 11, 1922, the applicant filed an appeal from, the benevolence board to the insurance committee, as provided in Article 19. This appeal was in the following language:
 

 “I herewith file an appeal from the decision rendered by the disability insurance benevolence board, on the 18th day of November, 1922, whereby my claim for permanent disability was denied by said board. I fully understand and agree that this appeal is subject to the provisions of the laws governing the mutual benefit department of the order of Railway Conductors of America, and particularly Article 19 thereof, and hereby agree to yield a cheerful compliance to such laws.”
 

 This written appeal bears the signature of Carpenter, and he must have understood that his claim arose solely under Article 19, and that he was entitled to only such benefits as might be procured by virtue of that article. Having reached the conclusion that the applicant’s rights are referable in the last analysis to Article 19, it only remains to be determined whether he has the right to submit his claims to a court of justice, after having fully exhausted all remedies under the laws of the order.
 

 
 *262
 
 However severe the injuries to applicant’s foot, such injuries failed to come within the provisions of Article 18, and there can therefore be no recovery under that section.
 
 Brotherhood of Railroad Trainmen
 
 v.
 
 Walsh,
 
 89 Ohio St., 15, 103 N. E., 759.
 

 In argument, counsel have discussed two former decisions of this court:
 
 Baltimore & Ohio Rd. Co.
 
 v.
 
 Stankard,
 
 56 Ohio St., 224, 46 N. E., 577, 49 L. R. A., 381, 60 Am. St. Rep., 745, and
 
 Myers
 
 v.
 
 Jenkins, Admr.,
 
 63 Ohio St., 101, 120, 57 N. E., 1089, 81 Am. St. Rep., 613. In both of those cases there was a definite promise to pay, and it was held that claimants were entitled to have the judgment of the courts on such promises after exhausting all remedies within the organization. Those cases are distinguishable from the instant case, because the claim in this case arises out of a law of the order which contains no promise to pay, but places the claim entirely upon a basis of benevolence. We are not without authority in the interpretation of laws of fraternal organizations which give to certain boards created by them the power to determine benevolences, and many' cases have been decided by courts of other states involving laws of fraternal and beneficial associations in all respects similar to Article 19 as above quoted.
 
 Pool
 
 v.
 
 Brotherhood of Rd. Trainmen,
 
 143 Cal., 650, 77 P., 661;
 
 Eighmy
 
 v.
 
 Brotherhood of Rd. Trainmen, 113
 
 Iowa, 681, 83 N. W., 1051;
 
 Rieden
 
 v.
 
 Brotherhood of Rd. Trainmen
 
 (Tex. Civ. App.), 184 S. W., 689;
 
 Huff
 
 v.
 
 Grand Lodge of Rd. Trainmen,
 
 97 Neb., 848, 151 N. W., 979;
 
 Robinson
 
 v.
 
 Brotherhood of Rd. Trainmen,
 
 80 W. Va., 567, 92 S. E., 730,
 
 *263
 
 L. E. A., 1917E, 995;
 
 Kelly
 
 v.
 
 Brotherhood of Rd. Trainmen,
 
 308 Ill., 508, 140 N. E., 5, 29 A. L. R., 243.
 

 All of the foregoing cases support the doctrine that where there is no agreement or promise to pay, but there is, on the contrary, a provision for benevolence in cases not coming within the laws of the order which do contain definite promises of payment, and where a board is provided to determine whether or not such benevolences may be granted, the courts will not interfere even though the claimants have exhausted all remedies within the laws of the order. No contrary authorities have been cited and we are able to find none. The reasoning of those cases is persuasive and in our opinion states sound principles. Upon the authority of those cases, as well as upon principle, we are of the opinion that this case does not involve a determination of legal rights, but purely a question of benevolence, and that the duly constituted boards provided by the order of railway conductors with power to hear and determine such matters in the first instance, and later to review them upon appeal, are confronted with no question of legal rights, but solely a consideration of merit from the standpoint of benevolence.
 

 For these reasons the judgment of the Court of Appeals must be reversed and that of the court of common pleas affirmed.
 

 Judgment reversed.
 

 Jones, Matthias, Day, Allen, Kinkade and Robinson, JJ., concur.