[File No. 6308.]

THOMAS J. HUFFMAN, Respondent, v. BROTHERHOOD OF RAILROAD TRAINMEN, Appellant.

(259 N. W. 663.)

Opinion filed March 13, 1935.  Rehearing denied March 28, 1935.

*P. W. Lanier,* for appellant.

*Fredericks & Fredericks,* for respondent.

BURKE, Ch. J.  This is an action to recover on a beneficiary certificate issued by the Brotherhood of Railroad Trainmen to the plaintiff, Thomas Jay Huffman.  The certificate provides:

"That Thomas Jay Huffman, a member of Jamestown Lodge, No. 125 of said Brotherhood is entitled to all of the rights, privileges and benefits of membership in the Brotherhood of Railroad Trainmen and

subject to the obligations and responsibilities provided in the Constitution and Rules of the Brotherhood and pledges the Brotherhood of Railroad Trainmen to the payment of $2000.00) Two Thousand . . . only Dollars in the way of a death benefit to . . . Louisa May Huffman, bearing the relation to him of . . . Wife."

The certificate also provides for the disability benefits as set forth in the constitution and rules of the Brotherhood and the action is brought to recover for a benevolent claim under section 70 of the constitution. "This Certificate is issued by the Brotherhood and accepted by the member upon the express understanding and agreement between the Brotherhood and said member that all of the provisions of the Constitution and Rules of the Brotherhood now in force or which hereafter may be adopted, which as printed and published by the Brotherhood, the application for Individual Reserve Certificate signed by him, together with all conditions herein or endorsed hereon, and the report of medical examination, copies of which application and report of medical examination are attached hereto, all of which are made a part hereof and together with this Certificate, constitute the contract between said member and the Brotherhood, as fully and completely as if incorporated herein and made a part of this Certificate, and the acceptance by said member of this Certificate shall be construed as consenting to the terms hereof and said member shall in every particular, while a member of the Brotherhood, comply with all laws, rules and requirements thereof."

The provision in the constitution of the Railroad Trainmen relating to disability claims are, first:

"Total and Permanent Disability Claims.

"Sec. 68. Any beneficiary member in good standing who shall suffer the amputation or severance of an entire hand at or above the wrist joint, or who shall suffer the amputation or severance of an entire foot at or above the ankle joint, or who shall suffer the complete and permanent loss of sight of both eyes, or upon becoming seventy (70) years of age, shall be considered totally and permanently disabled, but not otherwise, and shall thereby be entitled to receive, upon furnishing sufficient and satisfactory proofs of such total and permanent disability, the full amount of his beneficiary certificate. A disabled member paid under this section shall, *unless holding a valid certificate in the*

*Individual Reserve Department,* automatically become a non-beneficiary *or honorary* member beginning with the month following the month in which his claim was approved providing he pays such dues and assessments that are required from non-beneficiary or *honorary* members." And second

"Benevolent Claims.

"Sec. 70. All claims for disability not coming within the provisions of § 68 shall be held to be addressed to the benevolence of the Brotherhood, and shall in no case be made the basis of any legal liability on the part of the Brotherhood. Every such claim shall be referred to the Beneficiary Board, composed of the President, Assistant to the President, and General Secretary and Treasurer, who shall prescribe the character and decide as to the sufficiency of the proofs to be furnished by the claimant, and if approved by said Board, the claimant shall be paid an amount equal to the full amount of the certificate held by him, and such payment shall be considered a surrender and cancellation of such certificate, provided that the approval of said Board shall be required as a condition precedent to the right of any such claimant to benefits hereunder and it is agreed that this section may be pleaded in bar of any suit or action at law, or in equity, which may be commenced in any court to enforce the payment of any such claims. No appeal shall be allowed from the action of said Board in any case; but the General Secretary and Treasurer shall report all disapproved claims made under this section to the Board of Insurance at its next annual meeting for such disposition as such Board of Insurance shall deem just and proper."

It is conceded that the disability claimed does not come under § 68 and must be, under § 70, addressed to the benevolence of the Brotherhood. There is nothing ambiguous about § 70. It states in very clear language that all claims for disability not coming under § 68 shall be addressed to the benevolence of the Brotherhood; that it shall in no case be made the basis of any legal liability on the part of the Brotherhood; that it shall be left to the beneficiary board, who shall prescribe the character and decide as to the sufficiency of the proofs and the approval of said board is required as a condition precedent to the right of any such claimant to benefits and it is agreed that this section may be pleaded in bar of any suit or actions at law, or in equity, which may

be commenced in any court to enforce any such claim. The action of such board is final, no appeal is allowed therefrom. The allowance of a benevolent claim, under § 70 of the constitution, is a matter of discretion, allowed as a gift and not as a matter of right.

The defendant is a voluntary association, without capital stock, organized for the mutual benefits of its members and not for profit as a lodge system with a ritualistic form of work and representative form of government. It has all the attributes of a fraternal organization, operating under article 6, §§ 5059 to 5090, inclusive, Compiled Laws 1913, and amendments thereto.

Section 5059 of article 6 entitled "Fraternal Benefit Societies" provides that: "Any corporation, society, order or voluntary association, without capital stock, organized and carried on solely for the mutual benefit of its members and their beneficiaries, and not for profit, and having a lodge system with ritualistic form of work and representative form of government, and which shall make provisions for the payment of death benefits in accordance with § 5062, is hereby declared to be a fraternal benefit society."

Section 5060 provides for and defines the lodge system. Section 5061 provides for a representative government. Section 5061a reads as follows: "Except as herein provided, such societies shall be governed by this article, and shall be exempt from all provisions of the insurance laws of this state, not only in governmental relations with the state, but for every other purpose, and no law hereafter shall apply to them unless they be expressly designated therein."

Section 5062, as amended by chapter 166 of the Session Laws of 1931, reads as follows: "Every society transacting business under this Act shall provide for the payment of death benefits, and may provide for the payment of benefits in case of temporary or permanent physical disability, either as the result of disease, accident, or old age; provided, the period of life at which the payment of benefits or disability on account of old age shall commence, shall not be under seventy years, and may provide for monuments or tombstones to the memory of its deceased members, and for the payment of funeral benefits. Such society shall have the power to give a member, when permanently disabled or on attaining the age of seventy, all, or such portion of the face value of his certificate *as the laws of the society may provide;*

(italics are ours) provided, that nothing in this Act contained shall be so construed as to prevent the issuing of benefit for a term of years less than the whole of life, which are payable upon the death or disability of the member occurring within the term for which the benefit certificate may be issued. Such society shall, upon written application of the member, have the power to accept a part of the periodical contributions in cash, and charge the remainder, not exceeding one-half of the periodical contribution, against the certificate with interest payable or compounded annually at a rate not lower than four per cent per annum; provided, that this privilege shall not be granted except to societies which have readjusted or may hereafter readjust their rates of contributions, and to contracts affected by such readjustment."

Section 5070a, as amended by chapter 167 of the Laws of 1931 and subdivision "d" of said section, as amended, reads as follows: "A society shall have full power to provide for the regulation, government and control of such certificates and *all rights, obligations and liabilities incident thereto and connected therewith, not at variance with the provisions of this Act, including the means of enforcing payment of contribution,* designation of beneficiaries, and the changing of such designations."

Section 5076 of said article 6 reads as follows: "Officers and members of the supreme, grand, or any subordinate body of any such incorporated society shall not be individually liable for the payment of any disability or death benefit provided for in the laws and agreements of such society, but the same shall be payable only out of the funds of such society and in the manner provided by its laws."

It seems clearly to be the intention of said article 6 to permit fraternal benefit societies to govern themselves. Section 5061a expressly says that "Except as herein provided, such societies shall be governed by this article, and shall be exempt from all provisions of the insurance laws of this state, not only in governmental relations with the state, but for every other purpose, and no law hereafter shall apply to them unless they be expressly designated therein." And again in subdivision "d" of the amendment to § 5070a, chapter 167, Session Laws of 1931: "A society shall have full power to provide for the regulation, government and control of such certificates and all rights, obligations and liabilities incident thereto and connected therewith, not at variance with

the provisions of this Act." This language and the language as expressed.in § 5061a of said article could not be broader and it is clear that fraternal benefit societies operating under article 6 of §§ 5059 to 5090 of the Compiled Laws of 1913 together with the amendments thereto authorize such fraternal benefit societies to govern themselves, subject only to the regulations in said article 6. The only limitation on the authority of such fraternal organization is found in § 5062 in that provision which fixes a disability at the age of seventy; that is a member cannot, under the law, be disabled on account of age until he reaches the age of seventy. It follows that there is nothing in § 70 of the constitution which conflicts in any way with said article 6.

The construction of § 70 of the constitution of the Brotherhood of Railroad Trainmen has been many times in the courts.

In the case of Pool v. Brotherhood of R. Trainmen, 143 Cal. at page 652, 77 P. 661, the court said: "Plaintiff agreed that his claim should be 'addressed to the systematic benevolence of the Brotherhood and shall in no case be made the basis of any legal liability on the part of the Brotherhood.' We must apply the ordinary rules governing contracts to the agreement made by the defendant with plaintiff in this case. He was guaranteed to be paid a certain sum in case of total disability from the causes set forth in § 45 of the constitution. He paid for and was insured against the loss of a hand or a foot or of both eyes. His contract was absolute in case his disability had been permanent and caused in the manner defined in the last-cited section. In other cases the claim was of a purely benevolent nature. The beneficiary board had the power to allow it or reject it, but no duty was imposed upon such board to allow it. If the board reject such claim, the claimant may have it acted upon by the next biennial convention, and the convention may make such disposition of it as may be deemed just and proper. We know of no reason why such contract may not be made. The plaintiff was not compelled to become a member of defendant, but, having become such member, he must show a legal liability within the terms of his contract before he can recover in court. . . . It was said in this court, speaking through Temple, J., in Robinson v. Templar Lodge, I. O. O. F. 117 Cal. 370, 375, 49 P. 171, 59 Am. St. Rep. 193. 'When a suit has been brought, it is, however, a defense to his claim to show that he has agreed to submit his demand to the

tribunals of the lodge under the prescribed procedure. The defendant is not engaged in business for profit. It is a semicharitable institution. It collects dues from its members merely to distribute to members in need according to a plan agreed to by all. It would seriously interfere with the usefulness of these mutual aid societies if their funds could be tied up by endless litigation.' See further Bacon, Ben. Soc. § 400a; Levy v. Magnolia Lodge, 110 Cal. 297, 42 P. 887; Hass v. Mutual Relief Asso. 118 Cal. 6, 49 P. 1056; Hogan v. Pacific Endowment League, 99 Cal. 249, 33 P. 924; Rood v. Railway Pass. & F. C. Mut. Ben. Asso. (C. C.) 31 F. 62; Van Poucke v. Netherland, St. V. DeP. Soc. 63 Mich. 378, 29 N. W. 863; Anacosta Tribe v. Murbach, 13 Md. 91, 71 Am. Dec. 625.

"This is not a case of an arbitrary adjudication of the officers of a benevolent association, declaring a forfeiture of property or of vested rights. It is simply the rejection of a claim that the lodge might in its charity have allowed, but it was agreed that such claim should be in the discretion of the lodge and not the basis of legal liability."

Section 70 of said constitution was before the West Virginia court in Robinson v. Brotherhood of R. Trainmen, 80 W. Va. 567, 92 S. E. 730, L.R.A.1917E, 995 and the court said: "Clearly, the nature of plaintiff's injury did not entitle him to an award or recovery of benefits under § 68 of the constitution. For he did not suffer the amputation or severance of an entire hand or foot, or the loss of the sight of both eyes. That section is clear and unambiguous, and there is no occasion to resort to any rule applicable to the construction or interpretation of doubtful language. It 'does not cover the case of an amputation or severance of only a part of a hand, although the hand is permanently disabled for use in performing any manual service whatever.' Brotherhood of R. Trainmen v. Walsh, 89 Ohio St. 15, 103 N. E. 759, wherein § 68 was construed and applied. Hence, the liability of defendant, if any there be, is confined to § 70.

"The contention of plaintiff, in assailing the validity of § 70, is that the decision of the tribunal thereby established to pass upon disability claims is practically an arbitration, and that an agreement to submit such a claim to arbitration in advance of a controversy is invalid, as against public policy, because its object and effect are to oust the courts of their jurisdiction." The court then points out that that

would be the rule "if by its contract the society assumes an absolute legal obligation to pay a definite sum in a certain event or under certain conditions, and does not merely engage to pay such benefits as may be awarded by its officers. Bauer v. Samson Lodge, K. P: 102 Ind. 262, 1 N. E. 571; Woolsey v. Independent Order, O. F. L. 61 Iowa, 492, 16 N. W. 576; Lewis v. Brotherhood Acci. Co. 194 Mass. 1, 79 N. E. 802, 17 L.R.A.(N.S.) 714; Whitney v. National Masonic Acci. Asso. 52 Minn. 378, 54 N. W. 184; McMahon v. Supreme Tent, K. M. 151 Mo. 522, 52 S. W. 384; Burlington Voluntary Relief Dept. v. White, 41 Neb. 561, 59 N. W. 751; Baltimore & O. R. Co. v. Stankard, 56 Ohio St. 224, 46 N. E. 577, 49 L.R.A. 381, 60 Am. St. Rep. 745."

Continuing the court said: "But the claim here asserted falls within another distinct class of cases, requiring the application of a different rule. The basis of the difference lies in the voluntary character of the obligation assumed by defendant, as evidenced by § 70 of its constitution, which is expressly made a part of the contract sued on. The distinction is clearly drawn in Whitney v. National Masonic Acci. Asso. 52 Minn. 378, 54 N. W. 184, wherein, after holding upon the facts proved that in a contract creating a definite obligation to pay a certain sum of money upon a specified contingency an agreement that the rights and obligations of the parties should be determined by arbitration without resort to a civil action is invalid, the court said: 'The case before us is distinguishable from those where the agreement provides only for the determination by arbitration of some particular fact or facts, as well as from cases where the contract expresses no obligation to pay any definite sum or to do any particular thing, but only to pay such sum or do such thing as shall be determined by the arbitrators. In such cases, and perhaps some others, the principle of law which is decisive of the present case is not controlling.'

"The same distinction is noted with equal clarity in Daniher v. Grand Lodge, A. O. U. W. 10 Utah, 110, 37 P. 245, where it is said that such a provision or agreement to submit is binding in the absence of fraud, although the court did observe that where the sum to be paid is definite the clause in the constitution of the order making the decision of a board of its own creation on the claims of the members final and

conclusive is legally ineffectual to bar an action on the contract. 'Such provisions have no more effect than a revocable agreement to submit to an award; because, otherwise, the attempt would be to usurp the functions of the sovereign power, for it alone can create judicial tribunals.' So in Robinson v. Templar Lodge, I. O. O. F. 117 Cal. 370, 375, 49 P. 170, 59 Am. St. Rep. 193, where the constitution of the society provided that the provision for benefits should not be construed to create the relation of debtor and creditor, or any legal contractual relation enforceable by an action at law. . . .

"Thus treating and construing the certificate issued to plaintiff and the constitution of defendant as embodying the contract between them, it is obvious no legal liability enforceable at law has arisen in this instance. This conclusion is inevitable from the nature of the brotherhood and the character of the obligation it has assumed, and is fully sustained by the decisions cited. . . . Eighmy v. Brotherhood of R. Trainmen, 113 Iowa, 681, 83 N. W. 1051 . . . 'The constitution of the order provides a tribunal to decide the very question now in controversy in this case; namely, whether or not the plaintiff's claim amounted to total disability. In accepting the certificate the plaintiff agreed, with the other members of the beneficial order, that he would submit this question to the tribunal so constituted. It was a tribunal of his own choice. It was doubtless provided for the express purpose of preventing litigation, and thereby to prevent the funds of the order from being taken and used in defending suits. It is to the interest of every member of the order that this regulation should be enforced. In our opinion the decision of such tribunal is conclusive upon the plaintiff, and the merits of the decision . . . cannot be inquired into collaterally, either by action at law or any other mode.' Sanderson v. Brotherhood of R. Trainmen, 204 Pa. 182, 53 A. 767."

In the case of Grand Lodge, B. R. T. v. Smith, 129 Miss. 738, 92 So. 837, 27 A.L.R. 863, the supreme court of Mississippi quotes at length from the case of Robinson v. Brotherhood of R. Trainmen, I. O. O. F. supra, and at page 839 [92 So.] the court said: "The only case directly in point referred to on behalf of appellee is Bond v. Grand Lodge, B. R. T. 165 Ill. App. 490. This case was decided by an intermediate and not a court of last resort. It was referred to and discussed as an authority in Robinson v. Brotherhood of R. Trainmen,

I. O. O. F. 80 W. Va. 567, 92 S. E. 730, L.R.A.1917E, 995, supra. The court in the latter case, in discussing the reasoning and soundness of that case, said: 'We cannot assent to the exceptional interpretation of the certificates and constitution of the defendant made by the fourth district appellate court of Illinois in Bond v. Grand Lodge, supra, followed by the later case of Convery v. Brotherhood of R. Trainmen, 190 Ill. App. 479, whereby such certificates are given the effect of an absolute and enforceable legal obligation to pay a sum certain in any case of total and permanent disability of the member. Avowedly, that was a strained construction, made to avoid the otherwise conclusive effect of the decision of the beneficiary board under § 70, as sustained by the overwhelming weight of authority. Apparently the question of liability under these certificates has not been determined by the supreme court of Illinois. But that court did hold in Railway Pass. & F. C. Mut. Aid & Ben. Asso. v. Robinson, 147 Ill. 138, 35 N. E. 168, that although generally, when one of the parties is sought to be made the final judge as to the rights involved, the courts will not give such a construction to a contract as to have that effect if it is possible to give any other, yet 'it is competent for members of benefit societies to so contract that their rights as members shall depend upon the determination of a tribunal of their own choice, which shall be conclusive.' " Continuing the Mississippi court said: "Appellant accepted a contract by the plain terms of which there is no liability to him by appellant for the disability he suffered, and we are unable to see any reason why he should not be bound by it. The decision of this question goes to the root of the whole case, and renders it unnecessary to decide the question whether a party to a contract can bargain away his right to resort to the courts, for, if he has no rights, there is nothing to contract away." Order of R. Conductors v. Carpenter, 114 Ohio St. 255, 151 N. E. 45; Brotherhood of R. Trainmen v. Walsh, 89 Ohio St. 15, 103 N. E. 759.

It is conceded that the plaintiff's claim for total disability does not come under § 68, which is entitled "Total and Permanent Disability Claims." If it came under § 68 clearly the plaintiff would be entitled to recover on a showing that he had suffered amputation and severance of an entire hand above the wrist joint or the amputation or severance of an entire foot above the ankle joint or the complete and permanent

loss of sight of both eyes or upon becoming 70 years of age. He has not lost a hand or foot or the sight of both eyes and is not seventy years of age; does not come under and does not claim to come under the section of the constitution which provides specifically for certain total disabilities. The claim under § 70 is made to the benevolence of the organization and is wholly within its discretion. If allowed it is a gift and not a matter of right. It follows that the order and judgment appealed from must be and is reversed and the case dismissed with costs.

CHRISTIANSON, BURR, NUESSLE and MORRIS, JJ., concur.

(On Petition for Rehearing.)

BURKE, Ch. J. Respondent has filed a petition for rehearing in this case claiming that we have overlooked rules 22 and 23 of the rules of the Brotherhood of Railroad Trainmen, that the record shows that the defendant, Brotherhood of Railroad Trainmen, violated their own rules in not allowing the plaintiff to present his claim as provided by the rules and constitution of the said Brotherhood of Railroad Trainmen.

Sections 68 and 70 are sections of the constitution of the Grand Lodge of the Brotherhood of Railroad Trainmen and §§ 22 and 23 are rules prescribed by the order beginning on page 119 of Exhibit 3.

Section 20, page 130 of the rules, is entitled "Total and Permanent Disability Claims" and is identical with § 68 of the constitution relating to total and permanent disability claims. Section 22 of the rules entitled "Benevolent Claims" is the same as § 70 of the constitution. It provides that: "All claims for disability not coming within the provisions of Rule No. 20 shall be held to be addressed to the benevolence of the Brotherhood, and *shall in no case be made the basis of any legal liability on the part of the Brotherhood. Every such claim shall be referred to the Individual Reserve Board, who shall prescribe the character and decide as to the sufficiency of the proofs to be furnished by the claimant, and if approved by said board,* the claimant shall be paid the amount due on the certificate held by him, and such payment shall be considered a surrender and cancellation of such certificate, *provided,*

*that the approval of such board shall be required as a condition precedent to the right of any such claimant to benefits hereunder, and it is agreed that this rule may be pleaded in bar of any suit or action at law, or in equity, which may be commenced in any court to enforce the payment of any such claims. The decision of the Individual Reserve Board shall be final."*

This rule is in harmony with § 70 which provides specifically that a benevolent claim shall in no case be made the basis of any legal liability. The approval of the board shall be required as a condition precedent and it further provides that the rule may be pleaded in bar of any suit or action at law, or in equity and the decision of the board is final.

Rule 23. "A member desiring to present a claim under Rule No. 22 shall petition his lodge in writing upon the form provided by the General Secretary and Treasurer; said form must be properly executed by the claimant, and a regular practicing physician and surgeon, showing the condition of the member and the basis of his claim. If approved by the lodge, the secretary shall forthwith forward the form with notice of such approval to the General Secretary and Treasurer, who will at once forward to the lodge necessary blanks and instructions for presenting a claim." This section is substantially the same as § 71 of the constitution, so far as presenting the claim and the furnishing of the blanks, they are identical.

All there is in the record about a claim is in the testimony of Donald Booth, secretary and treasurer of the local organization at Jamestown, and certain letters from the defendant, as follows: "I ask you to state, Mr. Booth, whether prior to this, the receipt of Exhibits (5) and (6), you had made a requisition as head and representative of the local organization, for permission to file proof of claim for Mr. Huffman and Mr. Wasson. A. Yes." Exhibit 4 is addressed to

"Mr. D. G. Booth, Treas.,

"529 Second Avenue, N.,

"Jamestown, N. D.

"Dear Sir and Brother:

"This will acknowledge receipt of your favor of the 11, 1933, requesting that we furnish you proper forms for filing benevolent claims

on behalf of Brother Howard Wasson and Brother T. J. Huffman of your lodge.

"In reply desire to state that the Individual Reserve Bd. does not find it consistent to furnish blanks for filing claims on behalf of these two members, due to the fact that payment of *their claims was recently refused by the Board of Insurance.* (Italics are ours.) However, if their conditions have grown materially worse since they were last examined, if they will secure from their attending physicians, full and complete statements of their present physical conditions and forward same to this office, when received, I will be pleased to refer same to the Beneficiary Board for their consideration as to whether or not in the opinion of the Board their physical conditions are such as would warrant them in permitting these two Brothers *to file new claims.*" (Italics are ours.)

From this letter it appears that their claims had been filed and were rejected and no further consideration would be given unless a different condition was shown.

On August 11, 1933, the Brotherhood again wrote to Mr. D. G. Booth as follows:

"This will acknowledge receipt of your communication enclosing a doctor's statement with reference to Brother Howard Wasson of your lodge and after giving consideration to this statement and all evidence to date, the Beneficiary Board are of the opinion that there is no disability other than was previously considered in his former disapproval claim and they do not find it consistent to take further action at this time."

Again on the same date the defendant wrote to Mr. Booth as follows:

"We are in receipt of a statement signed by Dr. Arthur W. Ide with reference to the physical condition of Brother Thomas J. Huffman of your lodge and after giving consideration to this statement and all evidence in the claim file, the Beneficiary Board are of the opinion that Brother Huffman's physical condition is not such as to warrant them in permitting him to file another claim at this time."

These letters, which were offered by the plaintiff, do not bear out the claim that the Board refused to allow the plaintiff to present his claim but on the contrary they show that prior to July, 1933, the claim had been submitted and had been passed upon by the Board and dis-

allowed. Rule 22 gives the Board authority to prescribe the character and decide as to the sufficiency of the proofs and on three different occasions the Board decided that the proof submitted was insufficient. The decision of the Board, under rule 22, is final.

The claim is also made that chapter 23 of the Civil Code, §§ 5059 to 5090, Compiled Laws 1913, inclusive, does not apply and that the law applicable is found in chapter 168 of the Laws of 1931. Chapter 168 of the Laws of 1931 is entitled "An Act to amend and re-enact § 5088 of the Compiled Laws of the State of North Dakota for the year 1913, defining exemptions of certain societies." This amendment, chapter 168 of the Laws of 1931, became § 5088 of article 6 of chapter 23 of the Civil Code. It does not change the law in any way, except as to societies which are exempt from the operation of the law.

That part of § 5088, before the amendment, read as follows: "Or societies which limit their membership to any one hazardous occupation, or to similar societies which do not issue insurance certificates." This language was amended to read as follows: "Or societies which admit to membership only persons engaged in one or more hazardous occupations in the same or similar lines of business, nor to similar societies which do not issue insurance certificates." Before the amendment the exemption applied to societies where the membership was limited to those who were engaged in one hazardous occupation; while under the amendment the exemption applies to societies whose members are engaged in one or more hazardous occupations in the same or similar lines of business. This is a general provision and there is another provision which exempts an association of local lodges of a society doing business in the state which provides death benefits not exceeding $500 to any one person and disability benefits not exceeding $300 in any one year to any one person. The defendant is an association of local lodges which provides a death benefit of $2000 and therefore is not exempt, as such lodges are only exempt from the operation of the law when the death benefit does not exceed $500 to any one person and the disability benefit does not exceed $300.

It is claimed "that the amendment in 1931 was made for the sole purpose of making sure that this particular organization (Brotherhood of R. Trainmen) should not be subject to or governed by any local law and that at the instigation of this Brotherhood had this amended

act passed." The statute was referred to in our opinion for the purpose of showing that there was nothing in the law in conflict with the constitution and by-laws of the order and as a matter of course, if the order is exempt from the provisions of the law, as claimed, then the constitution and by-laws of the order prevail.

The petition for rehearing is denied.

BURR, NUESSLE, MORRIS and CHRISTIANSON, JJ., concur.